No. 44,523

General Leasing Corporation, a corporation, *Appellee*, v. James
E. Anderson, *Appellee*, and Farm Bureau Mutual Insurance
Company, Inc., a corporation, *Appellant*.

(416 P. 2d 302)

Opinion filed July 14, 1966.

*John G. Atherton*, of Emporia, argued the cause and *Samuel Mellinger*, of Emporia, was with him on the brief of appellant.

*Frank M. Rice*, of Topeka, argued the cause and was on the brief of appellee, General Leasing Corporation, a corporation.

*Frank T. Forbes*, of Burlington, was on the brief of appellee, James E. Anderson.

The opinion of the court was delivered by

Fromme, J.: This is an action to recover upon a car insurance policy. Judgment was entered in a negligence action for property damage to the plaintiff's automobile. Thereafter a proceeding in garnishment was filed against the judgment debtor and his insurance carrier as garnishee. This appeal is by the garnishee from the judgment of the trial court holding that the garnishee was indebted to the insured under the insurance policy and ordering payment to the plaintiff.

The facts necessary for an understanding of the questions involved relate back to the circumstances of the parties prior to and at the time of the accident giving rise to the original judgment in

the negligence action. The insured, James E. Anderson, defendant, will be referred to herein as the son. He was 22 years of age and owned a 1948 Chevrolet automobile. This car had been purchased by him and the title and tags were in his name. The Farm Bureau Mutual Insurance Company, Inc. had issued a policy of insurance on this car. The insurance company will be referred to as the company. The father, Adam Anderson, owned a 1959 Pontiac automobile and the same company had issued its separate policy to the father covering the 1959 Pontiac.

The son was involved in a collision while driving his father's car. He had driven the car from Emporia, Kansas, where he was attending college, to Newton, Kansas. The accident occurred on his return trip. The company paid its policy limits under the policy issued to the father. This proceeding involves liability under the terms of the policy issued to the son on his 1948 Chevrolet. The son's policy contained the following "drive other car" clause:

"V. USE OF OTHER PRIVATE PASSENGER AUTOMOBILES OR TRUCKS. Such insurance as is afforded by this policy under Coverages A, B, C-1 and E with respect to the described automobile or truck applies to the named insured if an individual, or spouse, if a resident of the same household or any dependent person whose legal residence is the household of the named insured and with respect to whom the named insured or spouse is a parent or stands in loco parentis, with respect to the use of any other automobile or truck by or in behalf of such named insured, spouse or dependent person. Definition of Insured Section III of this policy does not apply to 'use of Other Private Automobiles or Trucks.'

"This insuring agreement does not apply:

"(1) to any automobile or truck owned by or furnished for regular use to the named insured or a member of his household other than a private chauffeur or domestic servant of the named insured or spouse."

The company denied liability because of the exclusionary provision in its policy relating to the "drive other car" clause. We note that this clause in a general way extends policy coverages to the insured while driving cars other than the one on which the policy is issued. But there is a provision contained in this clause excluding coverage in certain instances. This exclusionary provision is the part giving rise to the questions in this lawsuit.

The company-garnishee denied liability under the son's policy. The plaintiff joined issue therewith. After a trial of the issues the court below made the following findings:

". . . paragraph V. (1) of said insurance contract.

"V. (1) reads as follows: 'This insuring agreement does not apply; to any automobile or truck owned by or furnished for regular use to the named

insured or a member of his household other than a private chauffeur or domestic servant of the named insured or spouse.'

"Since the automobile driven by the defendant that was involved in the collision which gave rise to the law suit and judgment in this case was owned by defendant's father, the pertinent portion of the above quoted provision is 'or furnished for regular use to the named insured.'

"The evidence introduced at the hearing revealed the following circumstances: That at the time of the accident, the defendant was a senior at Kansas State Teachers College in Emporia, and he lived in Emporia. Defendant's parents lived in Burlington, Kansas. The defendant had not lived in the home of his parents for several years, but he visited them frequently while he was working in Topeka and while he was attending school in Emporia. On some of these occasions, he borrowed his father's automobile. The day of the accident, defendant borrowed his father's automobile to drive to Newton, Kansas, for the purpose of applying for a job.

"The purpose of an exclusionary clause, similar to the one in question in the instant case, was explained by the Supreme Court of Kansas in Miller v. Farmer's Mutual Insurance Company, 179 Kansas. At page 54 of the opinion, the Court said, 'As a matter of practical everyday experience, the average person occasionally drives an automobile other than his own. The purpose and effect of the "use of other automobile" provision in a policy are obvious. It extends the driver's insurance to infrequent or casual driving of other automobiles, but excludes him from coverage with respect to his regular use of an automobile not covered by the policy.'

"The Court finds that the evidence did not establish that the father's car was 'furnished for regular use to the named insured' (defendant).

"The Court finds the garnishee is indebted to the defendant, James E. Anderson, for the balance of the judgment rendered against him in this case."

The company contends that the trial court erroneously interpreted the "drive other car" clause by limiting the application of the exclusionary provisions to the question of whether the father's car was "furnished for regular use to the named insured."

It contends further that the exclusionary provision excludes coverage in any case where the car being driven is owned by "a member of his household," and that the father and son were both members of "his household" as referred to in the son's policy. It therefore becomes necessary to examine this particular "drive other car clause." It is noted that the main exclusionary provision as set out in the policy contains five coordinating conjunctions introducing alternatives. These alternatives are: (1) automobile or truck, (2) owned or furnished for regular use, (3) to the named insured or a member of his household, (4) other than a private chauffeur or domestic servant, (5) of the named insured or spouse. The scrivener in drafting this clause did not insert any intermediate punctuation to assist in determining a correct meaning.

The exclusionary provision under consideration in *Miller v. Farmers Mutual Automobile Ins. Co.*, 179 Kan. 50, 292 P. 2d 711, is similar to the one being considered. However, it is not close enough in character and structure to be determinative here. It read as follows in the original abstract:

". . . does not apply:

"(1) To any automobile owned by, hired as a part of a frequent use of hired automobiles by, or furnished for regular use to the named insured or a member of his household other than a private chauffeur or domestic servant of the named insured or spouse;"

The purpose of "drive other car" clause is to extend the driver's regular insurance to casual driving of cars other than his own without the payment of extra premium. In order to confine the extended protection to such casual driving the coverage is made inapplicable to the driving of cars usually at hand and regularly used. This general purpose was expressed in *Miller*, supra, as follows:

". . . The purpose and effect of the 'use of other automobile' provision in a policy are obvious. It extends the driver's insurance to infrequent or casual driving of other automobiles, but excludes him from coverage with respect to his regular use of an automobile not covered by the policy . . ." (p. 54.)

The Missouri court in the case of *Giokaris v. Kincaid*, (Mo.) 331 S. W. 2d 633, 86 A. L. R. 2d 925, examined an exclusionary clause which read:

"(c) Insuring Agreement IV does not apply: (1) to any automobile owned by, registered in the name of, hired as a part of a frequent use of hired automobiles by, or furnished for regular use to either the named insured or a member of the same household other than a private chauffeur or domestic servant of such named insured or spouse; . . ."

The Missouri court said:

"We conclude it is not ambiguous and excludes from coverage the insured's use of other automobile (1) owned by the insured or a member of the same household, or (2) furnished for regular use to the insured or a member of the same household."

We have read the cases cited by both appellant and appellee. We have examined additional cases set forth in the annotation appearing in 86 A. L. R. 2d 937. In examining the present exclusionary provision we note that the coordinating conjunctions introducing the alternatives are not prefaced by punctuation. This would seem to indicate that each alternative is meant to have equal weight and apply to each of the other alternatives. When this provision is considered without a perversion of language and with equal em-

phasis on each part listed in the alternative the meaning is relatively apparent.

The exclusionary provision under consideration withholds protection under the policy (1) when the insured is driving another car owned by a member of his household, and (2) when the insured is driving an automobile furnished to him for regular use.

Two questions remain, (1) Were the father and son members of the same "household." (2) Was the trial court's finding that the father's car was not "furnished for regular use to the named insured" (son) supported by substantial evidence.

The evidence presented to the trial court established the following facts. The son was 22 years old and single at the time of the accident in May, 1960. His father had lived in Burlington for many years and the son stated he would always consider Burlington his "home." In March, 1957, the son worked in Topeka-and rented a room where he slept. That summer he went into national guard training for a month. He went to college at Emporia State in September, 1957, and rented an apartment where he ate and slept. In June, 1958, he went to work for the state highway department in Topeka and again rented a single room during the summer. That fall he attended college in Emporia and lived in a fraternity house. During the summer of 1959 he worked as a fireman on the railroad out of Emporia and attended national guard camp. In September, 1959, he attended college in Emporia and lived in a fraternity house. He was living in the fraternity house in May, 1960, when the accident occurred. The son had been substantially self supporting since 1957. He owned a 1948 Chevrolet automobile, and spent holidays and some week-ends with his folks in Burlington. In May, 1960, the son wanted to go to Newton to look for a job. The father drove his 1959 Pontiac to Emporia for his son to use and drove the son's car back to Burlington. The son had used the father's car three or four times a year on special occasions and on each occasion he obtained his father's permission to use the car. The son had supported himself for at least three years preceding the accident. He had slept and had eaten away from his father's home except for special occasions such as holidays, college semester breaks and week ends.

The trial court did not specifically find that the father and son maintained separate households. However, the court did make a finding that, "the defendant (son) had not lived in the home of his parents for several years, but he visited them frequently while

he was working in Topeka and while he was attending school in Emporia." Indirectly this would indicate that the court may well have found that the father was not a member of the son's household, and that the use of the father's car was not within that portion of the exclusionary provision of the "drive other car" clause of the son's policy.

In *Vaughn v. American Alliance Ins. Co.*, 138 Kan. 731, 27 P. 2d 212, this court examined the meaning of the term "household," and determined that a son who had left home twenty days before he stole his father's car, and during said twenty days had been a vagrant and fugitive from justice was not a member of his father's household.

The term "his household" has been quite generally defined by the courts to exclude a meaning which would limit the household to that group of which the insured is the head. It has been interpreted to include all members of a family group living under one roof. In such cases the exclusionary provision has been interpreted to prevent coverage under the "drive other car" clause where both driver and owner were members of the same household. (*Farm Bureau Mut. Auto. Ins. Co. v. Violano*, 123 F. 2d 692, cert. den. 316 U. S. 672, 86 L. Ed. 1747, 62 S. Ct. 1043; *Leteff v. Maryland Casualty Co.*, 91 So. 2d 123 (La.); *Lewis v. Bradley*, 7 Wis. 2d 586, 97 N. W. 2d 408.)

Under the facts presented by the record in this case we have no difficulty in determining that the son had not lived in the home of his parents for several years, that the son had maintained his household separate from that of his father, and that the exclusionary provision contained in the son's policy did not exclude coverage to the son while driving the father's car under the facts and circumstances of this case.

The next question raised by the appellant is whether there is substantial evidence to support the court's finding that the father's car was not furnished for regular use to the named insured.

In *Miller*, supra, it was *held* the use of a car by a civilian employee of the adjutant general's department was not part of a regular use when the car was one of four vehicles used occasionally to drive to a store or some place outside Topeka. The use had been limited to four or five times prior to the accident and the vehicle was not regularly used by the employee.

It has been generally held in other jurisdictions that a casual and occasional use of another car for which special permission has to be

secured each time the car is driven is not to be considered "furnished for regular use" under the exclusionary provision of the "drive other car" clause of an insurance policy. (*Juzefski v. Western Casualty & Surety Co.*, 173 Cal. App. 2d 118, 342 P. 2d 928; *Travelers Indem. Co. v. American Indem. Co.*, 315 S. W. 2d 677 (Tex.); *American Casualty Co., v. Lattanzio*, 78 N. J. Super 404, 188 A. 2d 637.)

In the present case the son kept his car in Emporia. The father kept his car in Burlington. The father's car was not usually available to the son or used by him regularly. The father brought his car from Burlington to Emporia for this special occasion. The father's car had been used by the son no more than three or four times a year.

The finding of the trial court that the father's car was not "furnished for regular use to the named insured" was supported by substantial evidence.

Although the trial court failed to consider one of the possible exclusions contained in the "drive other car" clause, it was not material error. No restriction was placed upon the evidence sought to be introduced. The judgment was supported by the facts and a proper judgment was rendered.

This court in *Binder v. Local Union No. 685*, 181 Kan. 799, 812, 317 P. 2d 871, held:

"It matters not that some of the reasons given by the trial court in arriving at its general conclusion may have been erroneous. Where the judgment rendered by the trial court is supported by the facts in the case, and must necessarily have been rendered under the law on the facts presented, it will not be reversed because the trial court adopted a wrong theory of the law, and based its judgment on such erroneous theory. (*Scattergood v. Martin*, 57 Kan. 450, 46 Pac. 935; *Saylor v. Crooker*, 97 Kan. 624, 156 Pac. 737; *La Harpe Farmers Union v. United States F. & G. Co.*, 134 Kan. 826, 8 P. 2d 354; and *Foster v. City of Augusta*, 174 Kan. 324, 256 P. 2d 121.)"

The judgment is affirmed.