No. 47,635

MARGARET L. LANDRUM, a widow, [now MARGARET L. LANDRUM McLAIN], *Appellee,* v. HOWARD KYLE TAYLOR, a minor, by his father, natural guardian and next of friend, JOHN E. TAYLOR; BRADLEY JOURDON TAYLOR, a minor, by his father, natural guardian and next of friend, JOHN E. TAYLOR, and JOHN E. TAYLOR, an individual, *Appellants,* v. CHERIL MCKAY and SHIRLEY A. SWARTZ, *Third Party Appellees.*

(535 P. 2d 406)

Opinion filed May 10, 1975.

*George M. Osgood,* of Shawnee Mission, argued the cause and was on the brief for appellant Howard Kyle Taylor.

*Joseph L. Cox,* of Tonganoxie, argued the cause and was on the brief for appellant Bradley Jourdon Taylor.

*William J. Brady,* of Stillings, Caplinger & Brady, Chartered, of Atchison, argued the cause and was on the brief for appellee Margaret L. Landrum [now Margaret L. Landrum McLain].

*Maurice P. O'Keefe,* of O'Keefe, Ball, O'Keefe & Lacey, of Atchison, was on the brief for Cheril McKay and Shirley A. Swartz third party appellees.

The opinion of the court was delivered by

KAUL, J.: This action involves a dispute over a boundary line between the owners of adjacent properties located in Doniphan County. The trial court found that the land in dispute consisted of approximately one acre and that a boundary line had been fixed by agreement as claimed by appellee (Margaret L. Landrum [now McLain]) and third party appellees (Cheril McKay and Shirley A. Swartz). Judgment was entered for appellees permanently enjoining appellants (Howard Kyle Taylor and Bradley Jourdon Taylor) from interfering with appellees' peaceful possession. The controlling issue on appeal is whether there is evidence to support the findings of the trial court.

The plaintiff, Margaret L. McLain, and her two daughters, Cheril McKay and Shirley A. Swartz, are joint owners of all of the Southwest Quarter of Section 14, Township 1, Range 19, lying south and west of the Missouri River. Defendants, the Taylors, own the east fifty acres of the Southeast Quarter of Section 15, Township 1, Range 19, lying adjacent to the north and west of the plaintiffs' property. The boundary line in dispute is the common line between the two tracts which runs easterly from Kansas Highway No. 7 to the Missouri River at a point where both tracts corner on the west bank of the Missouri River. Plaintiff, Margaret L. McLain, and her husband at the time, Virgil E. Landrum, acquired title to their property as tenants in common by purchase from Flavel C. Nuzum on May 4, 1963. On the death of Virgil E. Landrum in 1968, Margaret became the owner of an undivided three-fourths interest and her two daughters, Cheril McKay and Shirley A. Swartz, an undivided one-eighth interest each. Defendants purchased their tract from the estate of Earl Dunn in 1971.

For convenience the appellees (Margaret L. McLain and her daughters, Cheril McKay and Shirley A. Swartz) will be referred to as plaintiffs, and their land will be referred to as the east tract;

the appellants (Howard Kyle Taylor and Bradley Jourdon Taylor) will be referred to as defendants and their land as the west tract.

Plaintiffs claimed that Virgil Landrum and Earl Dunn, defendants' predecessor in title, entered into an oral agreement which ratified and confirmed the boundary between the respective tracts as a roadway extending from Kansas State Highway No. 7 to a large cottonwood tree on the bank of the Missouri River. The roadway was identified by testimony and photographs. It was marked by vehicle tracks and a culvert, or tube located in the roadway, about midway between the highway and the river bank. Plaintiffs offered testimony tending to show that the roadway had been recognized as the boundary by Flavel Nuzum, their predecessor in title, and Earl Dunn for many years. Defendants, on the other hand, claimed the land in question consists of about three acres; that it was filled in by accretion; and that the true boundary was a line established by a survey made by D. V. Fehrman, a surveyor, in 1956. The Fehrman line was reestablished by a survey made by the Riddle Engineering Company in 1972. This line was roughly parallel to and about two hundred feet south and east of the roadway. There was no dispute concerning the boundary until shortly after defendants purchased the west tract from the Dunn estate when they caused a portion of the land south and west of the roadway to be plowed and disked. This lawsuit followed.

In a trial to the court, sitting without a jury, both parties submitted considerable evidence much of which was in conflict. In rendering judgment the trial court made findings of fact and conclusions of law which set out all of the relevant facts which the court found to have been established by the evidence.

In findings Nos. 1 and 2 the court found the ownership of the parties to be that described in their respective deeds. Findings Nos. 3 to 10, inclusive, read as follows:

"3. Nuzum and Dunn recognized that the boundary between these two tracts of land was a road from Kansas State Highway Number 7, to the Missouri River, at which point was a large cottonwood tree.

"4. A survey was made of part of Section Fifteen (15) by D. V. Fehrman in 1956, but there was no testimony that this survey was intended to establish a boundary between these two tracts of land and no fence was ever erected, nor was there ever any line established on the ground.

"5. In 1972 the Riddle Engineering Company was requested to reestablish the survey line made by D. V. Fehrman in 1956. Mr. Riddle testified that he was not requested to establish a boundary between these two tracts.

"6. Virgil E. Landrum and Margaret L. Landrum, husband and wife,

purchased the real estate described in finding number one from Flavel C. Nuzum and his wife in 1963, and shortly thereafter, Virgil Landrum and Earl Dunn agreed that the road heretofore described would be the boundary between their two tracts.

"7. This line was so considered until shortly after the defendants purchased the tract described in finding number two, at which time, in the spring of 1972, they caused a small portion of ground south and west of this road to be plowed and disked.

"8. Shortly thereafter Margaret Landrum caused a fence to be constructed along the boundary that was agreed to between her husband and Earl Dunn. This law suit followed.

"9. The Missouri River has been stable in this area since about 1911, except for a short period in the year 1933, when the river cut slightly into the bank. At no time did the river ever cut away from the bank.

"10. The land in dispute is approximately one acre and is not accretion land."

In finding No. 11 the trial court ruled that defendants are permanently enjoined from interfering with plaintiffs' peaceful possession to that portion of the Southwest Quarter of Section 14, lying south and west of the Missouri River, except that portion of the quarter section lying north and east of the roadway, which the court determined to be the boundary line. Judgment was rendered accordingly.

On appeal defendants raise numerous points of error, most of which are leveled at the trial court's findings of fact.

In their first point defendants claim the trial court erred in finding that plaintiffs owned the respective undivided interests in the property described. Defendants' argument on this point is not clear. As we are best able to ascertain from their brief, the point which defendants attempt to make arises from a discrepancy between the description of their land as alleged in the pleadings and admissions made by plaintiffs' counsel in his opening statement. The description in plaintiffs' deed to the east tract conveyed all of the Southwest Quarter of Section 14 south and west of the Missouri River. Apparently, plaintiffs' counsel admitted in his opening statement that plaintiffs actually owned less and were claiming less in that they actually claimed only that part of the quarter section lying south of the roadway boundary line. The west line of plaintiffs' east tract, if extended to the river, would have included a small triangular tract lying north of the roadway bounded on the west by the west line of the Southwest Quarter of Section 14, and on the north and east by the river. In his opening statement at

trial plaintiffs' counsel admitted they were claiming less than their deed called for. He said:

". . . [W]e are not including all of the land according to the terms of our abstract, we are telling the Court at this time we are relying upon a lesser amount which was agreed upon between the parties of the two adjacent land owners, the Dunns' and the Landrums. . . ."

Our examination of the trial court's memorandum reveals this discrepancy in that in finding No. 1 the trial court found plaintiffs owned all of the quarter section lying west and south of the river. We find nothing in the record indicating that any issue was presented to the trial court concerning this discrepancy, in any event the matter is cleared up in the court's finding No. 11 and the journal entry of judgment wherein the trial court excepts from plaintiffs' land that portion of the quarter section lying north and east of the roadway.

An appellate court will attempt to harmonize apparently inconsistent findings of the trial judge and will not read into them an unwarranted inconsistency. Even if findings appear to be inconsistent, the decision of the trial court may be sustained on the basis of those findings which allow the conclusion reached by the court below, if they are supported by evidence. (5 Am. Jur. 2d, Appeal and Error, § 844, p. 288.) The question for the appellate court is whether the judgment is correct. (*General Leasing Corp. v. Anderson,* 197 Kan. 327, 416 P. 2d 302; and *Foster v. City of Augusta,* 174 Kan. 324, 256 P. 2d 121.)

It is clear that the trial court intended to and did establish the mutual boundary running along the roadway extending from Kansas Highway No. 7 to the river bank.

Defendants challenge a number of findings of the trial court on the ground of insufficiency of the evidence upon which the findings were based. In this connection it must be remembered that on appeal it is not the function of the appellate court to weigh conflicting evidence, pass on the credibility of witnesses or redetermine questions of fact. The reviewing court is concerned only with evidence which supports the trial court's findings, not with evidence which might have supported contrary findings. (*Parsons Mobile Products, Inc. v. Remmert,* 216 Kan. 256, 531 P. 2d 428.)

When a case is tried to the court and the evidence is heard orally, the trial court's findings in the case have the force and effect of a jury's verdict and if supported by substantial competent evi-

dence the findings will not be disturbed on appellate review. (*McAdam v. Fireman's Fund Insurance Co.,* 203 Kan. 123, 452 P. 2d 851.)

Defendants assail the trial court's finding that the parties' predecessors in title established the roadway as the mutual boundary by agreement. As previously noted, the trial court was presented with evidence which indicated that the roadway had been treated as the boundary for years. Additionally, testimony established that a mutual oral agreement fixed the boundary at the old road.

Mrs. McLain testified that not too long after she and her husband (Virgil) bought the property in 1963, her husband and Earl Dunn agreed that the boundary was along the old roadway which she pointed out on an aerial photograph, which had been admitted into evidence. Mrs. McLain testified that she, her husband and Earl Dunn were in the front yard of their home; that part of the roadway was visible from where they were standing; and that they had been talking about the property, crops and so forth, when the two men agreed upon the line. Mrs. McLain further testified that she and her husband chopped brush and bulldozed out trees up to the roadway; and that when crops were divided all below or south of the road was theirs.

Floyd Edgar Nuzum, a son of plaintiffs' predecessor in title, testified that he was familiar with the old roadway and the tube or culvert; that when his parents owned the land it was farmed up to the old road and that when he harvested crops for Mr. Alfrey, a common tenant of both landowners, he divided the crops at the road. Nuzum further testified that he served as an appraiser for the Dunn estate and that—"In making the appraisal for the estate, I considered the dividing line between the Landrum and Dunn property to be where the tube is and where Mrs. Landrum now has her fence."

Defendants produced testimony to the contrary concerning the division of crops, but we believe what has been related demonstrates there was ample evidence to support the trial court's finding of an agreed boundary line.

It is the general rule that boundary lines between adjacent properties are to be determined by reference to the deeds and the intention of the parties as reflected by the descriptions of the properties therein. (*Fritzler v. Dumler,* 209 Kan. 16, 495 P. 2d 1027.) However, as pointed out in *Fritzler,* there are exceptions to the general rule. The principles applicable to a case such as that at bar,

were enunciated in *Steinhilber v. Holmes,* 68 Kan. 607, 75 Pac. 1019, wherein we held:

"Where parties by mutual agreement fix boundary lines and thereafter acquiesce in the lines so agreed upon, they must be considered as the true boundary lines between them, even though the period of acquiescence falls short of the time fixed by statute for gaining title by adverse possession.

"The owners of adjoining tracts of land may, by parol agreement, settle and permanently establish a boundary line between their lands, which, when followed by possession according to the line so agreed upon, will be binding upon the parties and their grantees. Such an agreement, followed by possession, is not obnoxious to the statute of frauds." (Syl. ¶¶ 1 and 2.)

The foregoing principles have been applied by this court in a long line of cases. (See, *Moore v. Bayless,* 215 Kan. 297, 524 P. 2d 721; *Beams v. Werth,* 200 Kan. 532, 438 P. 2d 957; *In re Moore,* 173 Kan. 820, 252 P. 2d 875; *Fyler v. Hartness,* 171 Kan. 49, 229 P. 2d 751; and *Peterson v. Hollis,* 90 Kan. 655, 136 Pac. 258.)

It has been held that even though a line agreed to by adjoining property owners may not be exactly correct, it becomes the true dividing line between the lands by virtue of such an agreement, even though a subsequent survey establishes a different line. Such a survey does not determine title to land under controversy. (*Moore v. Bayless,* supra, p. 300, and cases cited therein.)

Cases in which the evidence was found insufficient to establish an agreement regarding a boundary line are to be distinguished from the present case where an agreement was found to exist by the trial court. (See, *Fritzler v. Dumler,* supra, and cases cited therein.)

Defendants contend that even if the boundary was established by agreement the agreed line was not sufficiently marked. The rule supporting defendants' position is expressed in 12 Am. Jur. 2d, Boundaries, § 78:

"It is now a well-settled principle of law that an unascertained or disputed boundary line dividing the lands of adjoining owners may be permanently and irrevocably established by a parol agreement of the adjoining owners. . . . It is, however, essential to the validity and binding effect of such agreement that the boundary line fixed by the agreement be definite, certain, and clearly marked, and that it be made by the adjoining landowners with reference to an uncertain or disputed boundary. . . ." (pp. 614-615.)

An aerial photograph admitted into evidence discloses that the old roadway and cottonwood tree comprising the agreed boundary are clearly marked. The roadway and tube were described by several witnesses. The trial court's findings evidence its satisfaction

that the line was sufficiently established by monuments. Under such circumstances, this court is satisfied that sufficient evidence exists to support the trial court's determination.

Defendants contend that they owned the strip of land in question by adverse possession. The record fails to indicate that this theory was ever presented to the trial court. Where it does not affirmatively appear that a question raised on appeal was presented for determination by the trial court, this court does not consider it on review. (*In re Johnson,* 210 Kan. 828, 504 P. 2d 217; and *Schneider v. Washington National Ins. Co.,* 200 Kan. 380, 437 P. 2d 798.)

Finally, defendants complain (1) that the trial court improperly admitted into evidence certain photographs of the land in dispute which were offered by plaintiffs; (2) that evidence proffered by plaintiffs of their ownership of land was at variance with the pleadings; and (3) that sufficient evidence does not exist to support the trial court's findings that the Missouri River has been stable in the disputed area since 1933, that the land in dispute comprises approximately one acre, and that no evidence was introduced which showed that surveys were undertaken to establish boundary lines.

Concerning defendants' assertion that the trial court improperly admitted plaintiffs' photographic exhibits, it must be observed that ordinarily the question of admissibility of photographic evidence rests within the sound discretion of the trial judge. (*Kirsch v. Dondlinger & Sons Construction Co., Inc.,* 206 Kan. 701, 482 P. 2d 10.)

Defendants argue that no proper foundation evidence was presented by plaintiffs to support the photographic evidence. Generally, before a photograph may be admitted into evidence its accuracy or correctness must be proved. The verification of a photograph preliminary to its admission contemplates proof that it accurately represents the person, place or thing photographed. *State v. Evans,* 115 Kan. 538, 224 Pac. 492; and cases cited in 9 A. L. R. 2d in an annotation commencing at page 899.)

In the case at bar Mrs. McLain identified the photographs and testified that they correctly represented the scenes depicted. Mrs. McLain fixed the dates when the photographs were taken and was present when Mr. Brady, her counsel, took them. Such testimony constitutes sufficient verification to allow the trial court to admit the photographs as evidence.

With respect to defendants' claim of variance between pleading and proof, the record discloses no objection made on this ground at any stage of the trial. Under the provisions of K. S. A. 1974 Supp. 60-215 (*b*) objection now comes too late. A party impliedly consents to the introduction of issues not raised in the pleadings by his failure to object to the admission of evidence relating thereto. (*Moore v. Bayless,* supra, p. 302.)

Concerning the court's finding that the river has been stable in the area since 1911, Floyd Nuzum testified that he had known the land for over fifty years and that—"They stopped the river from cutting in 1911. No part of that land got cut out."

We are convinced, from our examination of the record, that ample competent evidence exists to support the findings of the trial court in each instance where challenged by defendants.

The judgment is affirmed.

FROMME, J., not participating.