No. 47,770

In the Matter of the Estate of Willis B. Barnes, Deceased, ELMER BARNES, JOHN BARNES, HELEN JESSEE and JOSEPH W. JETER, Guardian Ad Litem, *Appellants,* v. JAMES M. BAILEY, Executor, PAUL A. FLAX and KATIE R. SCHUSTER, *Appellees.*

(542 P. 2d 1004)

Opinion filed December 13, 1975.

*Kenneth Clark,* of Clark and Shelton, of Hill City, argued the cause, and *Norbert R. Dreiling,* of Dreiling, Bieker and Kelley, of Hays, *Joseph W. Jeter,* of Hays, *William Wagner,* of Deines and Wagner, of WaKeeney, were with him on the brief for the appellants.

*Donald L. Martin,* of Flood, Martin, Coffelt and Flood, of Ellis, argued the cause, and was on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an appeal brought by the heirs-at-law of Willis B. Barnes from a judgment of the district court of Trego county admitting the will of Willis Barnes to probate. The judgment of the district court was entered after a trial *de novo* following an appeal from the probate court. This action was originally commenced in 1970 and has been before this court once before. (*In re Estate of Barnes,* 212 Kan. 502, 512 P. 2d 387.) The factual circumstances as they existed at the time of the first appeal are set out at length in that opinion.

Willis B. Barnes died testate February 25, 1970. He was survived by some eleven heirs-at-law. These included two brothers, Elmer Barnes and Frank Barnes, and nine nieces and nephews, John Barnes, Flora Poulsen, Lee Barnes, Wade Barnes, Edward Teeters Brown, Harold Teeters Brown, Raymond Teeters Brown, Lucille Syme and Helen Jessee. In his will, which was executed February 11, 1970, the testator left everything he owned to Katie R. Schuster and Paul A. Flax. Both were residents of Ellis, Kansas. Neither

was a relative of Barnes. On March 23, 1970, James M. Bailey, an Ellis county banker named as executor in the will, filed a petition in Trego county probate court to admit the will to probate. This petition listed as heirs-at-law only the deceased's two brothers, Frank and Elmer Barnes, and one nephew, John Barnes. The probate court set April 20, 1970, as the date for a hearing on the petition, and directed that notice of the time and place of the hearing be given pursuant to K. S. A. 59-2209. Notice was published in a Trego county weekly newspaper. The executor's attorney then filed an affidavit of mailing which stated that he had mailed a copy of the notice to Flax, Schuster and the two brothers of Willis Barnes on March 27, 1970. The affidavit also stated that on April 3, 1970, he became aware of Lucille Syme, daughter of a predeceased sister of Willis Barnes, and that he thereafter mailed a copy of the notice to her. Additionally, on April 17, 1970, he became aware of Helen Jessee, another such daughter and mailed a copy of the notice to her. The affidavit further stated that these persons constituted all of the heirs, legatees and devisees known to the petitioner or his attorney. It should be noted that this affidavit made no mention of John Barnes, whose name did appear on the petition for admission of the will to probate. The probate court admitted the will to probate on April 20, 1970. James Bailey was named as executor.

In May and July 1970, the executor mailed notices of hearing to allow demands and sale of certain personal property to Elmer and Frank Barnes and the two nieces previously mentioned. Once again the affidavits of mailing omitted mention of John Barnes or any of the other heirs-at-law. On December 28, 1970, Elmer and John Barnes filed a notice of appeal to the district court from the order admitting the will to probate. In the pleadings filed with the court they contended that the executor had failed to make a diligent effort to secure the names of the heirs-at-law of Willis Barnes; that the executor had failed to mail a notice of hearing to John Barnes, even though his name appeared on the petition for probate of the will; that Helen Jessee and Lucille Syme did not receive sufficient notice; and that no notice was given to the other heirs-at-law of Willis Barnes. Based upon the foregoing, they argued that the probate court had no jurisdiction to admit the will to probate and that its actions in so doing should be declared void. Following a responsive pleading from the executor denying the allegations, Elmer and John then moved for summary judgment. This motion was denied. Prior to trial Elmer and John filed a motion to vacate the order denying

summary judgment. Attached to this motion were affidavits stating, among other things, that Elmer never received a request for information as to the heirs, that John had never received notice of the hearing, and that a former neighbor to the decedent knew several people in Trego county who could have given information as to the names and addresses of decedent's heirs. This motion was denied. The matter was then submitted to the district court based upon the facts heretofore noted. The court found the will to be valid and admitted it to probate. Elmer and John Barnes then perfected the first appeal to this court.

This court was presented with three grounds for reversal in that case:

(1) the probate court lacked jurisdiction to admit the will to probate because of procedural defects;

(2) the district court also did not have jurisdiction because of procedural defects; and

(3) the court erred in holding that K. S. A. 59-2209 does not require mailing notice to a party in order to obtain jurisdiction for the purpose of admitting a will to probate.

This court ruled that the jurisdiction of a probate court to act upon a petition to probate a will does not depend upon whether or not all heirs are named in the petition. (*In re Estate of Barnes,* supra at 507.) The court found that a good faith effort to ascertain heirs had been made. It was held that failure to mail notice to an heir who, after the exercise of due diligence, was unknown to the executor did not deprive the probate court of jurisdiction to hear the petition. (*In re Estate of Barnes,* supra at 509.) This court then stated:

"Once it became apparent at the district court level that all parties interested in the probate of the will and whose rights might thereby be affected, had not been notified of the proceeding, it became imperative that such parties be so notified if reasonably possible to do so. Consequently, we believe the trial court erred in proceeding to determine the appeal as it did without notice to these missing heirs or, in the alternative, a showing why they could not be so notified." (p. 511.)

On the first appeal the case was reversed and remanded to the district court with directions to set aside its order determining the appeal from probate court and to issue an order that the executor give notice to all of the heirs of Willis Barnes of the hearing of the appeal in district court and make proof of same in accord with constitutional due process requirements before further proceedings in the appeal are conducted.

On remand the district court issued its order on September 11, 1973, to the executor to notify the following heirs:   Mildred Stilley, Francis L. Barnes, Ronald Bashor, Flora Poulsen, Lee Barnes, Wade Barnes, Edward Teeters Brown, Harold Teeters Brown, Raymond Teeters Brown, Lucille Syme and Helen Jessee.   This notice was ordered to be sent via certified mail, with restricted delivery and receipt requested to all heirs except Elmer Barnes and John Barnes who had already appeared in court represented by counsel.   Trial of the case was set for November 24, 1973.

On about November 5, 1973, it was first learned that Lee Barnes, one of the above listed heirs, had been killed in an automobile accident.   The executor promptly moved for a continuance of the trial to enable him to make an effort to find any heirs of Lee Barnes who might have an interest in the action.   A continuance was granted and trial was later set for March 4, 1974.

Prior to trial the attorney for the executor and Flax and Schuster filed an affidavit in which he stated, among other things, that he:

".   .   .   contacted the law firm of Black, Helterline, Beck & Rappleyea   .   .   .   Portland, Oregon, with the request that said attorneys make a search of the probate records in their county to ascertain if any probate proceedings had been commenced for the estate of Lee Barnes.   Said attorneys, by letter of November 19, 1973, stated that no such proceedings had been commenced and that they had contacted the funeral home for information regarding relatives of Lee Barnes.   They were advised that the only relative the funeral home was able to locate was Mr. John Barnes,   .   .   .   Said attorneys further furnished affiant with an official Death Certificate which showed that the vital statistical information had been given by John Barnes.   Thereafter, affiant contacted The Daniels Valley Chapel in LaGrande, Oregon, for information concerning the relatives of Lee Barnes.   Affiant was notified by telephone and letter by an employee of said Daniels Valley Chapel that no relatives were located with the exception of John Barnes.   *Thereafter, counsel for John Barnes and Elmer Barnes and counsel for the executor agreed that Lee Barnes was survived by no spouse or children or children of predeceased children, natural or adopted, or parent and that the heirs-at-law of Willis B. Barnes constitute the heirs-at-law of Lee Barnes.*

".   .   .   Affiant, thereafter, sent a Notice of Trial to *all* of the heirs-at-law of Willis B. Barnes with the exception of Elmer Barnes and John Barnes, notice to said parties being given to their attorneys of record,   .   .   .   that said notice was given by certified mail delivered to addressee only, return receipt requested; that attached hereto are photocopies of return receipts received from said individuals." (Emphasis supplied.)

On the day of the trial, March 4, 1974, Helen Jessee filed a motion to vacate the order of the probate court admitting the will to probate and a motion for summary judgment.   The basis for both

motions was that the probate court was without jurisdiction in the matter due to a failure by the executor to make a diligent effort to determine the names and addresses of all heirs-at-law of Willis Barnes. John and Elmer Barnes filed a similar motion. They also filed a motion to vacate the order of the probate court. An additional argument was presented in their motion. They contended that no notice was ever given to Lee Barnes or his unknown heirs or spouse and that such persons were indispensable parties to this action. The district court denied these motions, finding that jurisdictional requirements had been satisfied in all respects. The trial was then held. The district court made comprehensive findings of fact and conclusions of law. These findings, to be discussed in detail later, included a finding that Willis Barnes had been competent to make a will at the time the will was executed on February 11, 1970, and that venue was properly in Trego county. The appellants John Barnes, Helen Jessee, and Joseph W. Jeter, guardian ad litem for unknown heirs, filed the present appeal. Appellants allege three grounds for reversal:

(1) The probate court and the district court lacked jurisdiction to hear the case.

(2) The will is invalid due to the fact that the evidence established Willis Barnes was incompetent to make a will.

(3) Trego county was not the proper venue for this action since the proper venue was in Ellis county where Barnes resided at his death.

Appellants continue to argue that the probate court and the district court did not have jurisdiction to hear this case due to deficiencies in the notices to the heirs. Most of the issues of jurisdiction were determined adversely to appellants by this court in the first *Barnes* case. We will not again discuss those questions which were fully covered in the first appeal. We adhere to and readopt our conclusions as set forth in the previous appeal pertaining to the jurisdiction of the probate and district courts. The only new jurisdictional issue confronting the court is whether the executor fully complied with the order of the district court following the remand with directions to give proper notice to the heirs of Willis B. Barnes. In their brief appellants point to only two instances where notice was, in their estimation, faulty. They contend that Lee Barnes never received notice, nor did his unknown heirs, legatees, devisees or spouse. There is no question that Lee Barnes did not receive

notice. The record is clear that he was dead at the time the notices were mailed. The district court found that due diligence had been exercised in the attempts to locate any heirs of Lee Barnes. The district court's findings, of course, cannot be disturbed without a showing of lack of substantial competent evidence. (*Landrum v. Taylor,* 217 Kan. 113, 535 P. 2d 406; *Parsons Mobile Products, Inc. v. Remmert,* 216 Kan. 256, 531 P. 2d 428; and *McAdam v. Fireman's Fund Insurance Co.,* 203 Kan. 123, 452 P. 2d 851.) There is evidence in the record that a law firm and funeral home in Oregon were contacted in an effort to locate heirs of Lee Barnes. This search led only to the appellant, John Barnes, already a party to this action. Finally, after correspondence counsel for appellants agreed that Lee Barnes had no other heirs, at his death, except the parties presently in the litigation and that the heirs-at-law of Willis B. Barnes constitute the heirs-at-law of Lee Barnes. At the trial counsel for appellants brought up for the first time a possible son of Lee Barnes whose present whereabouts and whether living or deceased are unknown. Relying on statements of counsel the trial court found that Lee Barnes' son had disappeared in the military service on foreign soil under circumstances unknown and that the trial should not be postponed. It is clear that none of the Barnes family had knowledge of the son's whereabouts, so that notice of the hearing could be sent to him. Furthermore Joseph W. Jeter was present at the trial, having been appointed guardian ad litem to represent unknown heirs and attorney for those in the military service. A thorough examination of the record discloses substantial competent evidence to support the finding of the trial court that due diligence had been exercised in the attempts to locate any heirs of Lee Barnes.

Appellants also contend that proper notice was never given to Wade Barnes, a nephew of the testator. The record gives no indication that this issue was raised in the district court. It is apparently raised for the first time in the appellant's brief. An issue presented for the first time on appeal will not be considered by this court. (*Churchill v. State,* 216 Kan. 399, 532 P. 2d 1070.) And, assuming appellants had raised this point at trial, the contention is without merit. An affidavit appears which states that the executor's attorney mailed notice of hearing to Wade Barnes along with the other heirs of Willis B. Barnes. Furthermore, it is clear from the record that appellants' counsel represented Wade Barnes in a related action involving the same real estate which was a part of the estate of

Willis B. Barnes, which action at one time had been consolidated with this action for purposes of trial. In view of the evidentiary record it cannot reasonably be contended that Wade Barnes did not have proper notice of the trial hearing in the instant case.

Appellants next maintain that the trial court erred in finding Willis Barnes was competent to make a will on February 11, 1970. Once again the test for review by this court is whether the record discloses substantial competent evidence to support the finding. This court has on numerous occasions been presented with cases involving the competency of a decedent to make a will. From these cases have evolved a set of legal principles which govern this question. These principles most recently were set forth in *In re Estate of Perkins,* 210 Kan. 619, 504 P. 2d 564. They are as follows:

"(2) In an action to avoid a will on the grounds of incapacity of the testator, when it is shown that a will has been executed in accordance with the formalities required by law, the burden is upon the will contestant and he must produce evidence to support his position." (*Rich v. Bowker,* 25 Kan. 7; *In re Estate of Smith,* 168 Kan. 210, 212 P. 2d 322; *In re Estate of Walter,* 167 Kan. 627, 208 P. 2d 262.)

"(3) The test of a testamentary capacity is not whether a person has capacity to enter into a complex contract or to engage in intricate business transactions nor is absolute soundness of mind the real test of such capacity. The established rule is that one who is able to understand what property he has, how he wants it to go at his death and who are the natural objects of his bounty is competent to make a will even though he may be feeble in mind and decrepit in body." (*In re Estate of Hall,* 165 Kan. 465, 195 P. 2d 612; *In re Estate of Smith,* supra; *Klose v. Collins,* 137 Kan. 321, 20 P. 2d 494; *Barnhill v. Miller,* 114 Kan. 73, 217 Pac. 274; *Anderson v. Anderson,* 147 Kan. 273, 76 P. 2d 825; *In re Estate of Bernatzki,* 204 Kan. 131, 460 P. 2d 527.)

"(4) The time when a will is made is the time of primary importance to be considered in estimating testamentary capacity. Evidence of capacity or lack of capacity before or after that time serves only as an aid to determine the primary question. (*In re Estate of Hall,* supra.)" (pp. 626-627.)

An examination of the evidentiary record in light of these principles leads to a reasonable conclusion that Barnes was competent to make a will. Two of the individuals who were witnesses to the will testified at trial that in their judgment Barnes was competent. Both of the witnesses had known Barnes for many years and both felt he was under no undue influence at the time of the execution of the will. The physician who treated Barnes until the time of his death testified that although he had not seen Barnes on the day the will was executed he knew of no medical reason why Barnes would not have been competent at the time. There was also testimony from an attorney who had drafted numerous wills for Barnes over

a period of twenty-eight years. He stated that on all of these occasions Barnes knew the nature and extent of his property and who his relatives were. In at least one of the previous wills Willis B. Barnes excluded his blood relatives as beneficiaries and left his estate to others. The inescapable conclusion is that there was ample evidence presented to support the finding of competency by the trial court.

Appellants' final contention is that the court erred in finding that the decedent was a resident of Trego county. This argument is made for the purpose of proving that venue was not properly in Trego county. K. S. A. 59-2203 requires that proceedings for the probate of a will shall be had in the county of the residence of the decedent at the time of his death. The question arises here because Barnes lived at a hotel in Ellis county for the last several months of his life and died in a hospital in Ellis county. All of his real estate including his house were in Trego county. For purposes of jurisdiction, the terms "residence" and "domicile" are treated as equivalents by this court. (*Estate of Schoof v. Schoof,* 193 Kan. 611, 396 P. 2d 329.) This court held in *Schoof* as follows:

"The establishment of residence requires the concurrence of two factors: one physical, the other intellectual. There must be bodily presence at a location coupled with intent to remain there either permanently or for an indefinite period, before residence can be said to have been acquired. A residence once established is presumed to continue until the same has been abandoned. (*Keith v. Stetter,* 25 Kan. 100; *Palmer v. Parish,* 61 Kan. 311, 313, 59 Pac. 640.) To effect a change of residence, there must be transfer of bodily presence to another place coupled with an intent to abide in the new location either permanently or indefinitely. (*Ford, Adm'x, v. Peck,* 116 Kan. 74, 225 Pac. 1054.) The length of the stay in the new abode is not of controlling importance, for no stated period of time is required to complete a change of residence; the change may be effectuated on the first day of arrival in the new location provided the requisite intent to establish residence therein be present. (*Blair v. Blair,* 149 Kan. 3, 85 P. 2d 1004; *Arnette v. Arnette,* 162 Kan. 677, 178 P. 2d 1019.) . . ." (p. 614.)

Thus is can be seen that the fact that Barnes was no longer actually staying at his house in Trego county is not determinative. There was no evidence presented of intent to abandon his residence in Trego county. The decedent lived in his house in Trego county and declared as late as the summer of 1969 that this was his home. After moving to Ellis county he continued to manage his farm and his house remained vacant. In his will of February 11, 1970, he indicated he was "of Trego county." This will was, of course, executed

only two weeks prior to his death. The trial court's finding as to venue in Trego county is supported by the evidence.

The judgment of the district court is affirmed.