No. 53,685

Vern Mahlandt and Alpha Mahlandt, *Appellants,* v. E. E. Jabes and Clara Jabes, *Appellees and Cross-Appellants.*

(658 P.2d 356)

Opinion filed January 14, 1983.

*Ivan O. Poe,* of Poe, Green & Madden, of Wichita, argued the cause, and *O. J. Connell, Jr.,* of Connell & Connell, of El Dorado, was with him on the briefs for appellants.

*Roger M. Sherwood,* of Sherwood & Hensley, of Wichita, argued the cause, and *Kurt A. Harper,* of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

HOLMES, J.: This case was filed as a boundary dispute, quiet title action, and an action for both actual and punitive damages. The defendants filed a counterclaim seeking similar relief. The litigation involves: five common boundaries dividing the parties' properties; title to two tracts of land adjacent to one of the boundaries; an earthen dike built by plaintiffs on defendants' land; and a section of fence torn out and held by the defendants when they discovered it encroaching upon them. Both parties have appealed from various orders of the trial court. The case was transferred to this court pursuant to K.S.A. 20-3018(c).

Plaintiffs Vern Mahlandt and his wife, Alpha Mahlandt (hereafter Mahlandt), are the owners of the East one-half of the Northeast quarter, the West one-half of the Southeast quarter and the Northeast quarter of the Southeast quarter of Section 20, and the Northwest quarter of the Southwest quarter of Section 21, all in Township 29 South, Range 3 East of the 6th Principal Meridian, Butler County, Kansas.

Defendants E. E. Jabes and his wife, Clara Jabes (hereinafter Jabes), are the owners of the West one-half, the West one-half of the Northeast quarter and the Southeast quarter of the Southeast quarter of Section 20, and the Southwest quarter of the Southwest quarter of Section 21, all in Township 29 South, Range 3 East of the 6th Principal Meridian, Butler County, Kansas.

The property descriptions and the various allegations are difficult to keep in mind and therefore we have attached hereto as Appendix "A" a rough sketch of the areas in question. The drawing as attached was not an exhibit before the trial court but was prepared to assist in explaining and understanding the issues and facts in this opinion. It does not purport to be drawn to scale. The boundary lines which are in question are (1) the line between the West one-half and the East one-half of the Northeast quarter of Section 20 (hereafter line A); (2) the line between the West one-half of the Northeast quarter and the West one-half of the Southeast quarter of Section 20 (hereafter line B); (3) the line between the Southwest quarter and the Southeast quarter of Section 20 (hereafter line C); (4) the line between the Southeast quarter of the Southeast quarter and the Southwest quarter of the Southeast quarter of Section 20 (hereafter line D); and (5) the line between the Southeast quarter of the Southeast quarter and the Northeast quarter of the Southeast quarter of Section 20 and its

extension to the east as the line between the Southwest quarter of the Southwest quarter and the Northwest quarter of the Southwest quarter of Section 21 (hereafter line E), all in Township 29 South, Range 3 East of the 6th Principal Meridian, Butler County, Kansas. The five boundary lines originally in question are marked A through E on the attached appendix "A." Also attached as appendix "B" is a survey of all of Section 20 upon which the disputed boundaries are also marked A through E. More will be said about both appendices later.

The tracts of land being fought over have been designated B-1 and B-2 by the parties and are so shown on appendix "A." They resulted from the meanderings of Pole Cat Creek which snakes back and forth across boundary line B. B-1 is a tract, north of the B survey line, which Mr. Mahlandt has been farming for a number of years. He wants title to that land quieted in himself and his wife. B-2 is south of the survey line where the creek dips into Mahlandt property. The Jabes do not want B-2.

Near the center of Section 20, and the intersection of lines B and C, is an old artesian well. The plaintiffs intended to use the well to fill a pond which they were constructing in 1961 or 1962 just south of line B. Mr. Mahlandt dug a canal from the well to the pond area, but the well production was not adequate to fill the pond. So, Mr. Mahlandt dug two more wells near the first one in order to supply the necessary water. To prevent the well water from running onto the defendants' land, and to divert the water toward the canal and thence into the plaintiffs' pond, Mr. Mahlandt constructed an earthen dike on the defendants' property. Mr. Jabes had given the plaintiffs permission to construct the dike.

Around the time when Mr. Mahlandt was building his pond, he approached Mr. Jabes about the possibility of purchasing tract B-1 from him. He also offered to simply trade B-2 for B-1 and to establish boundary line B on the south bank of Pole Cat Creek. Mr. Jabes refused the offers. Mr. Jabes did, however, tell Mr. Mahlandt to use B-1 until such time as Jabes needed it himself. Mr. Mahlandt subsequently tore down some of the existing fence along line B and built new fence along the south bank of the creek. He also built a dike along the south bank around the loop of B-1 and back onto his own property. Mr. Mahlandt has been farming B-1 as part of his wheat field since that time. He claims to

have seen cattle pasturing on B-2 but Mr. Jabes denies the utility of that tract.

Problems with boundary line C gave rise to this lawsuit initially. The facts, instances and circumstances regarding line C deserve somewhat more expansive treatment.

Mr. Mahlandt testified that for as long as his family had owned the land east of line C, there had been an old fence running from the center stone at the intersection of lines B and C south to the section road. He thought the old fence was about a hundred years old. The old fence, about midway, took a slight three or four foot jog to the west, toward the property now owned by the Jabes family, before continuing south to the road. Mahlandt used the property east of line C as pasture and occasionally he would receive calls from the understandably irate Mr. Jabes requesting that Mahlandt remove his cattle from Jabes' wheatfield. Jabes cultivated his property west of line C for the production of wheat. Mahlandt had earlier agreed with Jabes that maintaining the fence along line C would be Mahlandt's responsibility.

In 1977, Mr. Mahlandt made arrangements to lease his pasture to three other men for summer grazing their livestock. Because the old fence was in such disrepair, the men agreed to help Mahlandt fix the fence in lieu of paying pasture rent. They tore out the old fence and replaced it with a new barbed wire fence. That is when the real feud began.

A few days after the new fence was built, Mr. Jabes happened to be driving along the south section road. He testified that when he looked at Mahlandt's new fence he noticed that it was in Jabes' own wheatfield. He said he always farmed his land up to about two feet away from the old fence. But that day, he observed his wheat growing on the Mahlandts' side of the new fence. Shortly thereafter, Mr. Jabes contacted the county surveyor and requested a survey pursuant to K.S.A. 19-1423.

Mr. Mahlandt was properly notified of the statutory survey to establish boundaries and corners, and the survey was conducted. No appeal was taken from the survey as provided by K.S.A. 19-1426, and the survey was duly recorded. Appendix B is a copy of the survey to which we have added the designation of lines A through E and an indication of the respective properties owned by the parties. The boundary line E, when extended to the east, is the line between the Northwest quarter of the Southwest quarter

of Section 21, owned by Mahlandt, and the Southwest quarter of the Southwest quarter of Section 21, owned by Jabes.

The survey determined that the south end of line C was actually some fourteen feet east of Mahlandts' new fence. The true boundary established by the surveyors was also east of the old fence line. It appears that the precise location of the old fence line is now uncertain due to the disturbance created when Mr. Mahlandt removed the old fence using a bulldozing blade on his tractor. It is, however, clear that the old fence was located some short distance west of the 1977 survey line.

At its north end, boundary line C was also determined by the surveyors to be incorrect. There they found an old center stone which was 4.63 feet west of the point that they considered to be the true center of Section 20. See appendix "B".

As indicated, no appeal was taken from the official statutory survey and there has been no contention in this appeal that the survey was not procedurally correct or that it failed in any way to comply with the statutes. As no appeal was taken from the survey, the boundaries and corners *of the section* are permanently established as shown by the survey. *Stalnaker v. Bair,* 110 Kan. 1, Syl. ¶ 2, 202 Pac. 600 (1921); K.S.A. 19-1426.

While the 1977 survey has established the boundary lines and corners of the section, it does not establish title to property or fix the boundary lines separating the Mahlandt and Jabes properties. *Landrum v. Taylor,* 217 Kan. 113, 535 P.2d 406 (1975).

In 1979, while checking the fences and gates prior to leasing his pasture, Mr. Mahlandt discovered that the south half of his fence on line C was missing. He immediately went in search of his neighbor. It turned out that Mr. Jabes and some young laborers had removed the fence sometime earlier. Mr. Jabes refused to return the fence materials to the plaintiff, claiming a lien for $60.00 to cover his cost in removing the fence. The instant lawsuit was filed shortly thereafter.

Following a four-day trial, with numerous witnesses and exhibits presented by each party, the trial court made, *inter alia,* the following findings of fact:

"(5) Disagreements have arisen between the parties with respect to the location of all boundaries in Section 20 and the boundary between the property owned by the respective parties in Section 21 and all parties herein seek to have a determination made of the common boundaries in Section 20 and the common boundary in Section 21 and title quieted to their respective parcels.

"(6) In April, 1977, plaintiffs caused the fence which separated the Southwest Quarter of Section 20 from the West Half of the Southeast Quarter of Section 20 to be removed and replaced.

"(7) At the request of defendants, the Butler County engineer performed a statutory survey on December 14, 1977, after notice to the parties and pursuant to K.S.A. 19-1423 *et seq.*

"(8) An appeal was not filed by any person from the county engineer's statutory survey.

"(9) An agreement or understanding was adopted between the plaintiffs and the defendants by the terms of which the existing hedge row was considered as the boundary between the plaintiffs on the East Half of the Northeast Quarter and the defendants on the West Half of the Northeast Quarter in Section 20. [Line A.]

"(10) An agreement or understanding was adopted between the parties that the existing hedge row would become the boundary between the plaintiffs on the Southwest of the Southeast Quarter and the defendants on the Southeast Quarter of the Southeast Quarter in Section 20. [Line D.]

"(11) The defendants permitted plaintiffs to install a dike around the artesian wells on property of the defendants and plaintiffs shall have a permanent easement to maintain the dike in its present condition on defendants' property in the Southwest Quarter in Section 20.

"(12) Except for the agreements set forth in findings 9, 10, and 11, the parties have not had any agreements with respect to any common boundaries in Section 20 or 21.

"(13) A fence was erected in Section 20 by plaintiffs between the Southwest Quarter and the West Half of the Southeast Quarter, a portion of which was erected upon the defendants' property. On April 14, 1979, defendants removed the South half of such fence, which was included in the portion which had been erected on defendants' property."

## The court then made the following conclusions of law:

"(1) Except where the parties had otherwise agreed, the statutory survey as filed by the Butler County Engineer on Section 20 shall establish the boundaries between the properties owned by the parties hereto.

"(2) The boundary between the East Half of the Northeast Quarter of Section 20 and the West half of the Northeast Quarter of Section 20 [line A] is hereby established to commence at the North end thereof on the existing hedge row, following such hedge row south to the point where it intersects the survey line establishing the boundary between the West Half of the Northeast Quarter of Section 20 and the West Half of the Southeast Quarter of Section 20.

"(3) The boundary line between the West Half of the Northeast Quarter of Section 20 and the West Half of the Southeast Quarter of Section 20 [line B] is hereby established as the survey line as shown by the statutory survey.

"(4) The defendants permitted plaintiffs to install a dike around their artesian wells on property of the defendants and plaintiffs shall have a permanent easement to maintain the dike in its present condition on defendants' property in the Southwest Quarter in Section 20.

"(5) The boundary line between the Southwest Quarter of Section 20 and the West half of the Southeast Quarter of Section 20 [line C] is hereby established as

commencing 4.63 feet West of the centerstone on the North and continuing South to the quarterstone as established by the statutory survey.

"(6) The boundary line between the Southeast Quarter of the Southeast Quarter and the Southwest Quarter of the Southeast Quarter in Section 20 [line D] is hereby established as the existing hedge row and to continue North therefrom on the same line to the point at which it intersects the East/West survey line of such quarter as established by the survey of Delamater, Freund & Associates, P.A., Survey Project No. 299-G-103 filed in the office of the County Engineer in Butler County, Kansas.

"(7) The boundary between the Southeast Quarter of the Southeast Quarter and the Northeast Quarter of the Southeast Quarter in Section 20 [line E] is hereby established as being the survey line as shown by the statutory survey.

"(8) The boundary line between the Northwest Quarter of the Southwest Quarter and the Southwest Quarter of the Southwest Quarter of Section 21 is hereby established as an extension of the survey line [line E] in the Southeast Quarter of Section 20 of the survey of Delamater, Freund & Associates, P.A., of the 9th day of May, 1979, Project No. 299-G-103 on file in the office of the County Engineer in Butler County, Kansas.

"(9) Judgment shall be entered in favor of defendants on the claim for damages asserted by plaintiffs.

"(10) Judgment shall be in favor of plaintiffs on the counterclaim for damages asserted by defendants."

No appeal has been taken by either party as to line A which the court found was established by agreement of the parties and nothing more needs to be said about that factual determination.

"In a long line of cases this court has recognized the principle that where parties by mutual agreement fix a boundary line between their properties, acquiesce in the line so fixed and thereafter occupy their properties according to the line agreed upon, it must be considered as the true boundary line between them and will be binding upon the parties and their grantees. The line becomes the true dividing line between the lands in question by virtue of such an agreement, even though a subsequent survey should establish a different boundary line." *Moore v. Bayless,* 215 Kan. 297, 300, 524 P.2d 721 (1974).

Plaintiffs have appealed from the determination of the location of lines B through E and from the court's failure to grant damages for the destruction of the fence along line C and a subsequent loss of rental as a result thereof. Plaintiffs' appeal as to line C is limited to the court's determination of the south end of the line. Plaintiffs are satisfied with the court's determination that the north end of line C should be 4.63 feet west of the center of the section as determined in the 1977 survey.

Defendants have cross-appealed from the trial court's determination that the north end of line C should be 4.63 feet west of the center of the section and from the court's granting of an easement

to plaintiffs for the continued maintenance of the dike erected on the defendants' property. Defendants are satisfied with the court's determination of the location of the south end of line C.

It appears that the main crux of this lawsuit is the location of the north end of line C. If established at the center of the section as determined by the survey, plaintiffs' artesian wells, which supply the water for their pond, will apparently be on defendants' property. However, if the north end of line C is 4.63 feet west of the center of the section as determined by the survey, then plaintiffs' wells are on their own property where the parties believed them to have been for many years.

Plaintiffs complain that the court committed error in not finding an agreement that the parties had established line B along Pole Cat Creek and therefore by agreement tract B-1 belongs to plaintiffs and B-2 belongs to the defendants. This case was well tried for nearly four days by able and competent counsel on both sides and essentially all of the complaints of the parties on appeal are actually directed toward the factual determinations of the trial court and as those determinations are adequately supported by competent evidence, they will not be disturbed on appeal. *Landrum v. Taylor*, 217 Kan. 113, Syl. ¶¶ 1 and 2, 535 P.2d 406 (1975).

The only matter which deserves further consideration is the trial court's determination of line C. Defendants complain that the trial court has altered the 1977 survey when it had no power to do so. Defendants assert that conclusion of law number (5), which establishes the north end of line C as being 4.63 feet west of the center of the section, when considered with conclusion of law number (1), to the effect that the survey shall control except where the parties have established different boundaries by agreement, is inconsistent with findings of fact numbered (9), (10), (11) and (12), which find no agreement as to line C. We agree; however, we do not view the inconsistency as being fatal. The record does not disclose any serious dispute as to where the parties thought the north end of line C was located prior to the survey. An old survey marker had been in place for many years and was accepted by the parties as the north end of line C. The disputes as to line C were mainly concerned with the jog to the west about half way down the fence line and the proper location of the south end of line C. We are of the opinion that the court's

determination as to the north end of line C *as between the parties* is adequately supported by evidence that they had agreed to the location of the northern part of line C and does not constitute a change in the statutory survey. This is borne out in part by the fact that Mr. Jabes made no attempt to remove the north part of the fence along line C. However, the same does not apply to all of line C because the evidence also indicates that, due to the tearing out of the old fence by use of a bulldozer blade, the court could not determine the old fence line and therefore felt compelled to rely upon the survey. We think the court's determination of the proper location of line C is supported by the evidence and should not be disturbed. The actual transcript of the trial judge's findings and conclusions made orally at the end of trial is not as confusing as to his actual intention in declaring the north end of line C to be 4.63 feet west of the survey center as defendants would have us believe. In his oral rulings at the end of trial the trial judge stated:

"In regard to part [line] C, I think that the boundary should best be established by going 4.63 feet west of the now placed corner [center] stone, and drawing with a straight line to the [half section] corner stone on the south line of the section which we talked about yesterday, which is in the roadway, and establish the fence there."

We also note that the journal entry reflecting the alleged inconsistencies about which defendants complain so loudly was prepared by the attorneys for the defendants and approved by counsel for each side.

In *Landrum v. Taylor,* 217 Kan. at 117, this court stated:

"An appellate court will attempt to harmonize apparently inconsistent findings of the trial judge and will not read into them an unwarranted inconsistency. Even if findings appear to be inconsistent, the decision of the trial court may be sustained on the basis of those findings which allow the conclusion reached by the court below, if they are supported by evidence. (5 Am. Jur. 2d, Appeal and Error, § 844, p. 288.) The question for the appellate court is whether the judgment is correct. (*General Leasing Corp. v. Anderson,* 197 Kan. 327, 416 P.2d 302; and *Foster v. City of Augusta,* 174 Kan. 324, 256 P.2d 121.)"

We are of the opinion the trial court's judgment is correct.

We have carefully reviewed the record and considered all of the various arguments by both parties including adverse possession, prescriptive easements, trespass, self-help, damages, the application of the statute of frauds, permissive user and the failure to grant a jury trial. Insofar as the arguments attack the factual

findings of the trial court, the record discloses those findings to be supported by substantial competent evidence and the findings will not be disturbed on appeal. As to the application of the legal principles asserted by the parties when the same are considered with the facts, they are found to be without merit.

The judgment is affirmed.

N

SECTION 20 | SECTION 21

A

CIVIT CAT CREEK

JABES

POLE CAT CREEK

B

overflow diversion channel (not in dispute)
dike (not in dispute)

dike

20     B-2   B-1     MAHLANDT     21

POND

POLE CAT CREEK

canal    WHEAT

artesian wells

WHEAT

C

E

PASTURE

1977 Survey
Old Fence
1977 Fence

D

JABES
(McCUNE)

ROAD

APPENDIX "A"

446

## DELAMATER, FREUND & ASSOCIATES, P.A.

ENGINEERS & ARCHITECTS

DEFENDANT'S
EXHIBIT
3

State of Kansas ) s.s.
County of Butler ) s.s.    I, John Herbert Greeley, a Registered Land Surveyor in the aforesaid county and state, do hereby certify that I did on the 14th day of December, 1977, survey Section 20, Township 29 South, Range 3 East of the Sixth P.M., Butler County, Kansas, to establish the center of said section.

The accompanying plat is a true and correct exhibit of said survey.

John Herbert Greeley, L.S.

412 Century Plaza • 111 West Douglas • Wichita, Kansas 67202 • 316 263 6121

299-G-1

APPENDIX "B"