No. 47,590

GORDON HOLT, *Appellee,* v. FRITO-LAY, INC., *Appellant.*

(535 P. 2d 450)

Opinion filed May 10, 1975.

*Glenn Opie,* of Great Bend, argued the cause, and *Fred L. Conner,* of Great Bend, was with him on the brief for appellant.

*Brock R. McPherson,* of Great Bend, argued the cause, and *Michael C. Brown,* of Great Bend, was with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, C. J.: This is an appeal from a judgment in an action to recover wages and penalty for nonpayment of wages pursuant to the provisions of K. S. A. 44-307 and 44-308.

On July 27, 1970, the plaintiff, Gordon Holt, was employed as a salesman by the defendant, Frito-Lay, Inc., at a weekly wage of $120 plus ten percent commission on sales over $1,100 per week. Plaintiff's duties were to deliver Frito-Lay merchandise by truck to various grocery stores and other businesses along certain routes. Holt was to follow the procedure accepted and used by the defendant's route salesmen all over the country, *i. e.,* the beginning inventory of merchandise was checked out to the plaintiff by defendant. At the end of each day the plaintiff would report to the defendant the amount of his sales and after deducting truck expenses, remit the balance to defendant by money order, checks or report "charge customers." Stale goods, unsold inventory, or initial

shortage in inventory were also reported to defendant and credit received by plaintiff.

Periodically, an inventory would be taken. The inventory remaining at the end of the designated period, credit for stale, unsold and unreceived merchandise, remittances, charge accounts and deductible expenses were supposed to tally with the beginning inventory for the period involved. A Frito-Lay salesman had about four weeks in which to advise the company of an error in inventory checked out. The plaintiff personally signed all inventories; he noted no shortage in his merchandise orders, and had never reported any inventory shortage to the company.

Any substantial inventory shortages were to be deducted from the salesmen's pay checks. The plaintiff claimed his pay checks were short and no deductions should have been made. The defendant claimed plaintiff's inventories were substantially · short on specific occasions and the shortages were properly deducted from his pay checks. The plaintiff terminated his employment with defendant December 1, 1970.

The plaintiff filed his action on January 21, 1971, and alleged that at the time of termination of employment wages were due him in the amount of $503.34, and penalties pursuant to K. S. A. 44-307 and 44-308 in the amount of $720, making a total due of $1,223.34. (We note without further discussion the above statutes have since been amended [see K. S. A. 44-313-316].)

In its answer, Frito-Lay denied owing plaintiff anything, and asserted in its cross petition that Holt owed it the sum of $195.57 together with interest at the rate of eight percent from the date the plaintiff terminated his employment until paid.

At the pretrial conference, plaintiff requested a trial by a twelve-member jury. The defendant requested a trial by the court. The district court directed a trial by a six-member jury. At the close of the evidence and following the instructions of the court, three special questions were submitted to the jury, which, together with answers, read:

"1. From the evidence do you find there existed between the Plaintiff and the Defendant an honest dispute as to the amount of compensation due?
"ANSWER Yes.
"2. If your answer to the preceding question is "No" state the amount of wages and penalties due to Plaintiff from the Defendant?
"ANSWER  .  .  .  .

"3. From the evidence what, if any amount, is owed by Plaintiff to Defendant on the claim of Defendant's Cross Petition?
"Answer None."

The judgment docket reflects the following remarks as of January 18, 1972:

"Judgment for defendant and against plaintiff as to the plaintiff's petition and judgment is entered in favor of the plaintiff and against the defendant on the defendant's cross petition."

On January 24, 1972, the plaintiff filed a motion to set aside the verdict and judgment and to enter judgment for plaintiff for the following reasons:

"1. The verdict of the Jury is contrary to the evidence and the intent of the Jurors.
"2. That the Jury in answering special question No. One understood and agreed that they were rendering judgment for Gordon Holt in the amount of unpaid wages, plus all penalty wages.
"3. That the verdict and judgment thereon entered by the Court is contrary to the understanding and intent of each and every Juror."

On January 26, 1972, the plaintiff filed a motion for new trial which gave similar but extended reasons to those listed above.

On February 24, 1972, some 37 days after the judgment was entered on the jury's verdict, the plaintiff's motions came on for hearing. All six jurors were called before the court to testify as to their intent in answering the special questions. Their testimony was quite similar: after discussing the case and considering the evidence a vote was taken—all six members cast their ballot in favor of the plaintiff. The foreman, after announcing the results, placed the ballots in his coat pocket and carried them there until he produced them at the hearing on the motion for a new trial. Each individual juror identified his or her ballot by the handwriting.

The testimony of the foreman was in harmony with the testimony of the other jurors, and we quote:

"Question: Now referring you to Special Question No. 1 there what answer do you have, what answer did you put down?
"Answer: I put down yes.
"Question: When you answered yes to that question, what did you understand it to mean?
"Answer: I took it that it asked whether there was an honest dispute or not and since Mr. Holt was suing Frito-Lay, I felt that Mr. Holt was honest in his suit of Frito-Lay and I felt if I answered it yes, that we would be in favor of him and he would receive the complete amount of compensation he asked for."

In disposing of the plaintiff's motion after the hearing, the district court stated in a memorandum opinion:

"The Court will first set forth that although the Plaintiff filed and presented this matter as a Motion to Set Aside Verdict and Judgment and to enter Judgment for Plaintiff Notwithstanding the Verdict, the court considers the matter as a motion to correct the verdict of the jury and receive the jury's oral verdict."

In the journal entry the district court found, "that the intent of the jury was to find for the plaintiff and they did so find." The court then concluded, "the jury finds for Plaintiff and the Court accepts the verdict of the jury making a finding for Plaintiff and against the Defendant in the sum of Seven Thousand Two Hundred Twenty-Three and 34/100 Dollars ($7,223.34), plus costs." The defendant's motion for a new trial was overruled, and this appeal followed.

The appellant contends the district court erred in imposing local Rule No. 7 (B) (7) which compelled the trial of the case to a six-man jury.

At the pretrial hearing on October 1, 1971, local district court Rule No. 7 provided:

"Counsel will state if a jury is requested and estimate trial time required. . . ."

The record contains the following excerpt from the pretrial proceeding:

"During these proceedings the court was advised by the Plaintiff that Plaintiff requested a jury trial:

"The Court: Six man jury.

"Mr. McPherson: No, sir.

"The Defendant, Frito-Lay requested a trial to the court, but the court ruled the cause should be tried to a jury."

We also find the following:

". . . The court ruled that trial of the case would be set for 9:00 A. M., January 18, 1972, before a six member jury to be selected from a twenty member jury panel."

The judicial district amended its Rule 7 to become effective January 1, 1972. Rule 7 (B) (7) provided:

"No. 7 (B) (7) Counsel will state if a jury is requested and estimate trial time required. In all civil jury cases, the jury shall consist of six members unless the court rules at pretrial that more shall be used."

This court passed upon this question in *Bourne v. Atchison, T. & S. F. Rly. Co.*, 209 Kan. 511, 497 P. 2d 110. It was held the right of trial by jury is a substantial and valuable right in which the state has an interest as a matter of public policy. It was also held the Legislature has the power to regulate the number of

jurors required in the trial of civil cases in the district courts as long as the right to a jury trial is not materially impaired.

K. S. A. 1971 Supp. 60-248 (*a*) (now K. S. A. 1974 Supp. 60-248 [*a*]) provides:

"*Stipulation as to number.* The parties may stipulate that the jury shall consist of any number less than twelve (12) or that verdict or a finding of a stated majority of the jurors shall be taken as the verdict or finding of the jury."

Under this mandatory provision, only by stipulation may the parties provide for a lesser number than a twelve member jury. (See, also, *Southard v. Lira,* 212 Kan. 763, 512 P. 2d 409; *Manzanares v. Bell,* 214 Kan. 589, 616, 522 P. 2d 1291.

There is nothing in the record which indicates the parties stipulated to a jury of less than twelve members. The district court in its application of its local rule has required the appellant to submit to a trial by a jury of six members without its stipulation or consent. The appellant having been denied a substantial statutory right, the case must be reversed and remanded to the district court for a new trial before a jury of twelve members.

Although what is said above disposes of the specific issue before us, there are other disputed issues which we touch on for the benefit of the court and the parties.

The appellant objects to the italicized part of the following instruction:

"You are further instructed that in an action by an employee for wages due and for penalties under the provisions of K. S. A. 44-307 and 44-308, as set forth in these instructions, does not apply where the service of an employee with the employer is terminated and there is an honest dispute about the amount due the employee from the employer, *and the amount found due is the amount claimed by the employer.*" (Emphasis supplied.)

The appellant contends the phrase "and the amount found due is the amount claimed by the employer," would appear to mean that an "honest dispute" could only exist where an employer is adjudged by a court to owe his employee exactly the sum asserted by the employer.

The appellant's objection to the instruction is well taken. There could be an honest dispute even though the jury found the amount due to be less than the employee contended but more than the employer contended to be due. In *Gawthrop v. Missouri Pac. Rly. Co.,* 147 Kan. 756, 758, 78 P. 2d 854, we stated:

". . . It would not do to say that every time an employee's service with a company was terminated and there was a dispute about the amount due,

the company should be made to pay a penalty for not paying the amount demanded, especially when it afterward turned out that the company was right. To so hold would permit unscrupulous employees to make demands they knew would not be met, and later bring an action for penalties. The statute was not intended to bring about such a result." (l. c. 758.)

Again, in *Bradshaw v. Jayco Enterprises, Inc.*, 212 Kan. 206, 510 P. 2d 174, we said:

"We observe that neither may a plaintiff's claim be taken at face value and the penalty statute invoked automatically. There is generally little room for an honest dispute, however, over the amount of regular wages due upon termination of employment, but where there is a good-faith counter-claim, as in *Osipik v. Jansen*, 210 Kan. 645, 504 P. 2d 148, or a claim for an excessive amount as in *Gawthrop v. Missouri Pac. Rly. Co.*, 147 Kan. 756, 78 P. 2d 854, or a dispute over contractual terms or the definition of wages, as in this case, it would be harsh and unjust indeed to apply the penalty statute." (l. c. 206, 207.)

If the employer and employee in good faith disagree as to the amount due, there exists an "honest dispute" regardless of the amount finally found to be due.

The appellant challenges the constitutionality of K. S. A. 44-307 and 44-308 if the statutes are to be interpreted so as to bring about the incredible result as the judgment under attack.

It is observed that most any statute may be given such a liberal interpretation as to lead to absurdities and result in the taking of property without due process of law. However, there is no occasion for such an interpretation of the statutes in question.

If there is an honest dispute, the so-called penalty statute has no application. If the employer fails to act in good faith in denying the wages due, then the penalty or exemplary damages may properly apply. In *Livingston v. Oil Co.*, 113 Kan. 702, 216 Pac. 296, we held:

"Chapter 219 of the Laws of 1911 (Gen. Stat. 1915, §§ 5880, 5881), which provide when wages shall be paid by corporations to persons leaving their employ and which prescribes penalties which are essentially exemplary damages for failure of any corporation to pay its employees within ten days after the termination of their employment does not violate any provision of the federal constitution; and an employee discharged without payment of his wages within ten days may have a clause of action under such act." (Syl. ¶ 4.)

See, also, *Bourne v. Atchison, T. & S. F. Rly. Co.*, supra.

The appellant asserts the district court erred in correcting the verdict and changing the judgment on the oral testimony of the jurors as to what their intentions were, some 37 days after the verdict

had been accepted and judgment entered. The facts with respect to this issue have been detailed and need not be repeated.

Without unduly extending this discussion by reviewing cases, we conclude that if the district court was of the opinion the jury was confused in the answers given to the special questions, a new trial should have been ordered in all fairness to the parties. A rule permitting the changing of a verdict and judgment on the oral testimony of the jurors more than 30 days after the verdict was rendered and the jury dismissed would establish a dangerous precedent. In *Hubbard v. Havlik,* 213 Kan. 594, 518 P. 2d 352, we held:

"Where under all of the facts and circumstances presented by the record in a case it is disclosed that the jury was confused in making findings and in awarding damages a new trial will be ordered." (Syl. ¶ 5.)

The judgment is reversed with directions to grant a new trial. It is so ordered.

FROMME, J., not participating.