No. 48,754

HAROLD HOLDER, *Appellee and Cross-Appellant,* v. KANSAS STEEL BUILT, INC. and GLEN T. CHILDERS, *Appellants and Cross-Appellees.*

(582 P.2d 244)

Opinion filed July 15, 1978.

*Herbert A. Marshall,* of Marshall, Hawks, McKinney & Hendrix, of Topeka, argued the cause, and *William T. Nichols,* of the same firm, was with him on the brief for the appellants and cross-appellees.

*Roger Sherwood,* of Wichita, argued the cause and was on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

FROMME, J.: Harold Holder brought an action in the district

court against his former employer, Kansas Steel Built, Inc., to recover commissions due him together with damages for willful non-payment. Glen T. Childers, the president, a director and the controlling stockholder of the corporation, was joined as a party defendant. The action was tried and a jury awarded $7,857.99 in unpaid commissions and $6,664.64 as the penalty provided for willful non-payment of the commissions under K.S.A. 44-315(*b*). The maximum penalty was assessed, *i.e.,* an amount equal to the unpaid commissions less the amount conceded due and tendered by the employer.

The employer appeals on various grounds and the employee Holder cross-appeals claiming the penalty should have equaled the total amount of unpaid wages. Before examining the points raised by the respective parties a factual background must be given.

Holder had been employed by Kansas Steel Built, Inc., as a draftsman and salesman since August, 1968. They were engaged in the sale and construction of steel buildings. Holder was hired to sell and to oversee his projects until they were completed. His work included drafting plans, preparing estimates, negotiating with subcontractors and collecting payment from the customers. During actual construction of a building he checked periodically to see that the work was being done correctly and on schedule. He would make the final inspection of the building with the owner-customer and contact the job superintendent of the subcontractor involved to have any final problems corrected.

When Holder was employed it was agreed his wages would be $1,000.00 per month plus commissions. As to the commissions, it was further agreed that when his sales in any year yielded a gross profit to the company of $60,000.00, or more, Holder was to receive a commission of 20% of the gross profits of the company from his projects which exceeded the first $60,000.00. After the $60,000.00 minimum was met his commission was to be paid whenever a project was completed and paid for by the customer.

In February, 1973, Mr. Holder gave Mr. Childers and the company one month's notice of termination. Holder had not received his commissions on certain projects sold in 1972 but not yet completed and paid for. Holder prepared an estimate of the gross profit on these jobs and gave the estimate to the corporation's bookkeeper. On March 2, 1973, when his employment

terminated, Holder and Childers met and discussed the list of projects on which Holder was to receive his commission when the projects were completed and paid for. Certain adjustments were suggested by Childers and made by Holder on his estimate of gross profit on these projects.

In November, 1973, the Holder projects were finally completed and paid for. The accountant for the corporation, Mr. Melton, determined the corporation's gross profit on each of Holder's 1972 projects by using the company ledger. He then took these ledger sheets to Mr. Childers for his review. When the ledger sheets were returned to the accountant additional charges had been entered in pencil by Childers on the ledger sheets. These added charges substantially reduced the gross profit figures on which Holder's 20% commission was figured. The total commission when figured on these reduced gross figures came to $1,193.35. Holder's estimate after the March 2 adjustments by Childers came to $5,746.00.

The additional adjustments included charges for the time Mr. Childers and another salesman had spent in inspecting the Holder projects, a bond fee, a $250.00 charge per project for estimated expenses that might be incurred for warranty work, plus expenses for insulation strips. In addition to the foregoing charges a further deduction of $1,960.00 was made from the 20% commission figure for the use of a company car during the last sixteen months Holder had worked for the corporation. Originally, when Mr. Holder had been furnished a car, he lived in Topeka. In October, 1971, he moved from Topeka to Osage City. The mileage charge made by Childers was for personal use of the company car in driving to and from Osage City. None of these charges or deductions had been made in prior years, and they were not discussed at the meeting on March 2, 1973, when other adjustments were suggested by Mr. Childers and made by Mr. Holder on his estimate.

The commission check covering gross pay of $1,193.35 was issued by the corporation in December, 1973. On the back of the check was typed a statement that "Endorsement herein constitutes full and complete satisfaction of any claim which Harold Holder has or may have for monies or damages against Steel-Built, Inc." On receiving the check and a schedule of deductions Mr. Holder called the office and advised the bookkeeper that

someone would be getting in touch with Mr. Childers. The check was returned to the corporation and suit was filed.

The first point raised by defendants-appellants is that the trial court erred in applying K.S.A. 44-315 which became effective July 1, 1973. The appellants contend the statutes in effect prior to July 1, 1973, K.S.A. 44-301, *et seq.* (Corrick), should have governed the cause of action because the statutes were in effect when plaintiff's employment terminated.

K.S.A. 44-315(*a*) provides that when an employee's employment is terminated the employer is to pay the earned wages not later than the next regular payday upon which he would have been paid if still employed. Subsection (*b*) provides:

"If an employer knowingly fails to pay an employee wages as required under subsection (*a*) of this section, such employer shall be liable therefor and shall be additionally liable for damages in the fixed amount of one percent (1%) of the unpaid wages for each day, except Sunday and legal holidays, upon which such failure continues after the eighth day after the day upon which paymen [*sic*] is required or in an amount equal to the unpaid wages, whichever is smaller: *Provided,* That such penalty shall apply only in the event of a willful violation. . . ."

(The statute was amended again in 1977. However, the changes were minor and are not relevant here.)

The court instructed the jury in the language of this statute and added:

"If the jury finds that the plaintiff is entitled to recover herein beyond that amount admitted by the defendant [$1,193.35] then they should consider this statute and its application under the facts herein. For this statute to apply the jury must find that the defendant knowingly withheld wages from the plaintiff and that the same was willful on defendant's part. . . ."

Appellants here contend the court's application of this statute was retrospective, because appellee terminated his employment on March 2, 1973, and the statute was not effective until the following July. They argue that retrospective application was improper and affected vested rights.

The appellee contends the court was correct in determining K.S.A. 44-315 applied because under the terms of the employment contract no commission was earned until (1) the sale was made, (2) the construction was completed, (3) the gross profit on all jobs totaled $60,000.00, and (4) the customer had paid for the job. Therefore, his cause of action for breach of contract did not accrue until all prerequisites were met in November of 1973.

Mr. Childers testified the commission was not payable to Mr. Holder until the jobs were completed in late November, 1973. At that time the new statute was in effect. Therefore it would appear the court was correct in applying K.S.A. 44-315. The statute was not applied retrospectively, as appellants contend. This court has held that a statute is not to be regarded as operating retrospectively because of the mere fact that it relates to antecedent events or draws upon antecedent facts for its operation. (*In re Estate of McKay,* 208 Kan. 282, 285, 491 P.2d 932 [1971].) A cause of action accrues when the right to institute and maintain a suit arises, or when there is a demand capable of present enforcement. (*Rex v. Warner,* 183 Kan. 763, 769, 332 P.2d 572 [1958]; *Fletcher v. Holcomb,* 142 Kan. 177, 181, 45 P.2d 1053 [1935].) There must be a right, a duty, and a default. (*Bruner v. Martin,* 76 Kan. 862, 93 Pac. 165 [1907].)

Appellee here could not have successfully maintained an action until November when all the prerequisites were met. The appellee's right to the commission, appellants' liability for the commission, and the failure to pay the amount allegedly due all accrued after the new statute became effective. The penalty provisions of K.S.A. 44-315 effective July 1, 1973, are applicable under the facts of this case to commissions becoming due and unpaid in November, 1973.

The second point raised by appellants is based on the refusal of the trial court to hold as a matter of law a reasonable and genuine controversy existed as to the amount due and therefore no penalty could be assessed. This court has held no penalty could be assessed under the prior law when there is an honest dispute as to the amount due. See *Gawthrop v. Missouri Pac. Rly. Co.,* 147 Kan. 756, 78 P.2d 854 (1938). In *Bradshaw v. Jayco Enterprises, Inc.,* 212 Kan. 206, 510 P.2d 174 (1973), there was found to be an honest dispute over the amount of vacation pay due. In *Holt v. Frito-Lay, Inc.,* 217 Kan. 56, 535 P.2d 450 (1975), it was said, if the employee and employer in good faith disagree as to the amount due, there exists an "honest dispute" regardless of the amount finally found due.

The "genuine controversy" and "honest dispute" language in these cases was a result of judicial decision. These words were not found in the former statutes.

However, when the new statutes were passed in 1973 certain

wording was added. The penalty under K.S.A. 44-315(*b*) is to be imposed "if an employer knowingly fails to pay an employee wages" within the specified time after discharge or resignation. K.S.A. 44-316(*a*) was added and relates to cases where there is a dispute as to the amount of wages due. It requires the employer to pay that amount conceded by him to be due. Under subsection (*b*) acceptance by the employee of the amount conceded to be due by the employer "shall not constitute a release as to the balance of his claim."

Under K.S.A. 44-315 and K.S.A. 44-316 the penalty authorized can be collected only if the employer knowingly or willfully fails to pay the wages due. This is generally a question of fact to be determined by the trier of fact. In this case the jury was instructed.

"(b) If an employer knowingly fails to pay an employee wages as required under subsection (a) of this section, such employer shall be liable therefor and shall be additionally liable for damages in the fixed amount of one percent (1%) of the unpaid wages for each day, except Sunday and legal holidays, upon which such failure continues after the eighth day after the day upon which payment is required or in an amount equal to the unpaid wages, whichever is smaller; provided, that such penalty shall apply only in the event of a willful violation."

The court defined willful:

"A willful act is one indicating a design, purpose, or intent on the part of a person to do wrong or to cause an injury to another."

The question of whether there was a knowing and willful failure to pay wages was properly left to the jury. Under the evidence there were large deductions from the gross profit figures previously used to figure the 20% commission. The employer unilaterally made these unusual deductions without consulting the employee. The deductions were not discussed at the last meeting of the parties on March 2, 1973. The employer's use of the release form on the back of the check indicated a knowing and willful attempt to forestall future litigation. The release placed on the back of the check by the appellant was in violation of K.S.A. 44-316(*b*) which reads as follows:

"(b)  Unless payment is made by binding settlement agreement, the acceptance by an employee of a payment under this section shall not constitute a release as to the balance of his claim and any release required by an employer as a condition to payment shall be in violation of this act and shall be null and void."

The evidence was adequate to support a finding by the jury that

the employer had knowingly failed to pay and that the employer willfully violated the act.

The third point raised is that K.S.A. 44-315 is not applicable to this case because K.S.A. 44-314 requires employers to pay all wages due employees "at least once during each calendar month." Appellants urge it was not a "wage" under this statute and the statute has no application to this case because the commission was due only once a year, or after Holder's projects had been paid for by the customer.

If an employer and employee could take wages out from under the effect of these statutes merely by agreeing the wages would be paid less often than once a month the intent of the statutes—both 44-314 and 44-315—would be circumvented. The opportunity for overreaching is evident. By violating 44-314 an employer could insure that he would never be liable for penalties under 44-315.

These sections of the statute need not be read together to the extent urged by appellants. K.S.A. 44-313 sets out the definitions for article 3 of chapter 44, including a definition of wages as follows:

"(c) 'Wages' means compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis less authorized withholding and deductions." (K.S.A. 44-313[c].)

Then 44-314 is a separate section requiring wages be paid at least once a month. It is not a limitation on the 44-313 definitions. Then 44-315 is yet another separate section requiring payment of wages to a terminated employee on the next regular payday, as required under 44-314. The reference to 44-314 is to "clarify" the words, "next payday", not to exclude those employees paid less often than monthly. In other words, it is not a matter of 44-313 broadly defining wages and 44-314 then narrowing that definition to include only that compensation paid monthly. If the intent of the legislature is to be given effect, the statute should apply to the commissions in this case, and we so hold.

Appellants' fourth point concerns error in the failure of the court to give certain instructions to the jury including an instruction on the effect of a breach of the employment contract by Holder. It is generally held that a party who has deviated in minor detail from the strict terms of a contract may recover under the contract, less any damages the other party has sustained from the

failure to comply strictly. See 17 Am. Jur. 2d, Contracts, §§ 375-378, pp. 818-822. The defendants' amended answer failed to set forth any set-off or counterclaim of this nature, yet the issue was fully explored by evidence introduced by both parties. In such case failure to amend the pleadings does not affect the result of the trial of such issues. (K.S.A. 60-215[b].) The plaintiff-appellee contended throughout the trial that Mr. Childers on behalf of the corporation agreed on March 2, 1973, the commissions would be paid without further deductions and without further performance by Holder. The defendants-appellants introduced evidence without objection to show that additional expenses were incurred by the corporation in completing the Holder projects.

The set-off urged by defendants-appellants in this case was an affirmative claim which, if established, would affect the amount of the net commissions due Mr. Holder. The burden of proving the amount of commissions due and the terms of the employment contract was placed upon Holder by the court's instructions. Since there was evidence introduced without objection fully exploring the question of whether there was complete or substantial performance, it would have been better practice to have given appellants' requested instruction II on substantial performance. However, this court feels the instructions given by the court adequately advised the jury of the respective contentions of the parties. The issues were sufficiently litigated and inherent in the jury's verdict is a finding that further performance by the employee Holder was not required under the final agreement of the parties on March 2, 1973.

Appellants' final point is that the court erred in permitting the appellee to introduce the 1973 tax returns of the corporation including balance sheets showing net worth figures. The tax return was introduced to show that the extra expenses charged against Holder's projects were not included within the costs of the projects or goods sold as reported in the corporation's tax return. No objection to these items was made in the trial court or at least no objection appears in the record presented to this court. This court declines to consider the point as it was not raised in the trial court. (*In re Estate of Barnes,* 218 Kan. 275, 280, 543 P.2d 1004 [1975].)

We turn now to appellee's cross-appeal.

Appellee contends it was error for the trial court to instruct the

jury that the maximum penalty allowable under K.S.A. 44-315, an amount equal to the unpaid wages, could not include the $1,193.35 tendered by the appellee. Appellee argues the tender was with conditions attached which failed to comply with K.S.A. 44-316(*a*). However, subsection (*b*) provides in part:

". . . [A]ny release required by employer as a condition to payment shall be in violation of this act and shall be null and void."

Therefore, it appears appellee would not have been bound by the release on the back of the check and was fully entitled to receive and cash the check without waiving any remedies he might have under the act. K.S.A. 44-316(*a*) requiring the payment of undisputed wages provides that the employee has the remedies provided by the act only as to "any balance claimed."

No error has been shown.

The final point raised on the cross-appeal relates to Holder's claim for punitive damages based on allegations of fraud. The trial court denied a requested instruction on punitive damages. The basis for denial was that the penalty provisions of K.S.A. 44-315 are themselves punitive in nature and a plaintiff cannot have both. Such a statutory provision is in the nature of liqui-dated exemplary damages. The trial court was correct in denying the request. When an employee elects to pursue the statutory remedy provided in case of willful non-payment of wages he is limited to the penalty provided by the statute, K.S.A. 44-315(*b*). He is not entitled to recover punitive damages in addition thereto.

The judgment is affirmed on both appeal and on cross-appeal.