No. 51,351

THE CITY OF SALINA, KANSAS, A Municipal Corporation, *Appellant,* v. HELEN JAGGERS, in her Official Capacity as the Register of Deeds of Saline County, Kansas *Appellee,* and DAUER IMPLEMENT CO., INC., a Kansas Corporation; THE SALINE COUNTY PLANNING & ZONING COMMISSION; THE SALINE COUNTY BOARD OF COUNTY COMMISSIONERS; JOHN FRANCIS COMMERFORD; THOMAS JOHN COMMERFORD; JAMES JOSEPH COMMERFORD; GEORGE E. COMMERFORD; and VALLE HAROLD COMMERFORD; *Appellees.*

(612 P.2d 618)

Opinion filed June 14, 1980.

*H. R. Kuhn,* of Arn, Mullins, Unruh, Kuhn & Wilson, of Wichita, argued the cause and *Larry O. Bengston,* of Salina, and *Ronald Barta,* of Barta and Barta, of Salina, were with him on the brief for the appellant.

*James P. Mize,* of Salina, argued the cause and *Constance M. Achterberg,* of Salina, was with him on the brief for appellees Helen Jaggers, The Saline County Planning & Zoning Commission, and The Saline County Board of County Commissioners, and *Drew Hartnett,* of Salina, was with them on the brief for the appellees Commerford.

The opinion of the court was delivered by

HERD, J.: This action was brought by the City of Salina against Helen Jaggers, Saline County Register of Deeds; Dauer Implement Co., a Kansas corporation; The Saline County Planning & Zoning Commission; The Saline County Board of County Commissioners; John F. Commerford; Thomas J. Commerford; James

J. Commerford; George E. Commerford; and Valle H. Commerford. This appeal represents two cases consolidated at trial and presents the following question: What governmental bodies must approve the designation of a plat in an unincorporated area located more than one mile but less than three miles from the nearest limits of an incorporated city, prior to the recording of the plat with the register of deeds?

The facts are undisputed and are unimportant to the disposition of this case. We will, however, include them as background information. Appellees, John F. Commerford, James J. Commerford, Thomas J. Commerford, George E. Commerford and Valle H. Commerford, are the fee owners of the East 60 acres of the Southeast Quarter of Section 11, Township 15 South, Range 3 West, in Saline County. The tract of land was platted as the "Commerford Final Plat" and is known as the "Commerford Tract." The tract lays within 3 miles of but more than 1 mile from the nearest points of the City of Salina and is not more than one half the distance from Salina and any other city.

On July 7, 1978, the City of Salina served written notice on Helen Jaggers, as Register of Deeds, directing her to refrain from recording the "Commerford Final Plat" until it was approved by the City Planning Commission and the Board of City Commissioners of Salina. The Register of Deeds did not heed the City's notice and filed and recorded the controversial plat on July 11, 1978. Thereafter on October 5, 1978, the County Planning & Zoning Commission issued a building permit to Dauer Implement Co., Inc., to erect a building upon lot one of "Commerford Tract".

On October 24, 1978, the City of Salina filed this action seeking a declaratory judgment and a permanent injunction against all appellees, except Helen Jaggers, who had been previously sued on July 24, 1978, in an action seeking identical relief. The two cases were consolidated in an order dated March 26, 1979. The City had previously dismissed its action against Dauer Implement Co., Inc. on November 28, 1978. At that time it was agreed the dismissal would not affect the positions of the parties in either case.

On May 11, 1979, the case was tried to the court. The City had filed a motion for summary judgment and that motion was overruled June 8, 1979. Defendants' motion to dismiss was sustained

and judgment was entered in their favor. This appeal followed. The parties stipulated one issue to be decided at trial: "[W]hether or not K.S.A. 19-2633 and K.S.A. 19-2905 were repealed by implication when the legislature enacted K.S.A. 12-705a and 12-705b in 1965." The resolution of that issue will shed light on the statutory procedure to be followed with respect to subdivision regulation within the three-mile unincorporated area surrounding the City of Salina, particularly as it applies to platting.

At the outset, we will examine whether there is a distinction between zoning and subdivision and platting statutes affecting the issue in this case. With respect to counties it appears the legislature intended to divide the statutes into separate zoning and platting statutes. K.S.A. 19-2633 and K.S.A. 19-2905 are illustrative of this point. As originally enacted, K.S.A. 19-2633 was described as: "Relating to the *subdividing and platting* of land outside of the corporate limits of cities." (Emphasis added.) It specified the land in question be more than one mile from the limits of any incorporated city.

K.S.A. 19-2905 was passed in 1939 some ten years after K.S.A. 19-2633 and was entitled:

"Authorizing zoning in certain townships of certain counties near cities of more than 100,000 population.

"An Act authorizing zoning in certain townships of certain counties for the purpose of promoting health, safety, morals, comfort and general welfare; to provide for the location and use of buildings, structures, and land for trade, industry, residence or other purposes; to divide such townships into districts or zones of such number, shape, and area as may be deemed best suited to carry out the purposes of this act; to regulate and restrict the construction, reconstruction, alternation or use of buildings, structures or land therein; to provide for the appointment of a zoning board; to provide for the adoption of comprehensive zoning plans; *to regulate and control plats and to provide for a comprehensive road and trafficway system;* to provide for the change of such regulations and boundaries of zones; to provide the method of procedure and other purposes, and to provide for the method of raising funds therefor, and prescribing penalties for the violation thereof." L. 1939 ch. 165.

Although the titles of the two acts accurately describe their contents as platting on the one hand and zoning on the other, the original act of which K.S.A. 19-2905 was a part contains a reference to regulation and control of plats. It is apparent the legislature considered county platting a part of county zoning and commingled the regulations of the two.

The same phenomenon occurs in the city statutes. As originally

enacted in 1921, K.S.A. 12-705 specifically referred to plats, replats, deeds or dedications of land. That statute is not located in city planning and subdivision regulation. It could be argued the statutes are divided into subdivisions under the general heading of planning and zoning in article 7. Throughout the planning and zoning statutes, however, the legislature has referred to the comprehensive plan which includes maps, plats and charts for the development of the city. Even if the statutes could be distinguished either as subdivision regulations or zoning regulations, both are controlled by the "comprehensive plan" provided for by K.S.A. 12-704. K.S.A. 12-705 authorizes cities which have adopted a comprehensive plan to adopt regulations governing the subdivision and land within the corporate limits of the city and "may include any unincorporated territory lying outside of but within three (3) miles of the nearest point on the city limits . . . ." The statute then places a condition on the adoption of subdivision regulations:

"[N]o such regulations or changes or amendments thereto adopted by a joint committee as hereinafter provided, shall become effective unless and until the same has been submitted to and approved by both the board of county commissioners and the governing body of the city."

Thereafter, the act provides the nature and extent of the regulations which are permissible for a city and in addition to other necessary rules provides a city may set conditions for approval of "plats" as a part of the regulations.

K.S.A. 12-705a provides if the area designated by the city for subdivision regulation includes area lying outside of the city and governed by county regulations, a copy of the city resolution designating the area shall be certified to the board of county commissioners, and within sixty days thereafter there shall be established by a joint resolution of the county and city a joint committee for subdivision regulation with authority to adopt regulations governing the subdivisions of land within the area of joint designation.

K.S.A. 12-705b regulates the plats on the area subject to subdivision regulation and requires, among other things, that "[a]ll such plats shall be submitted to the . . . joint committee for subdivision regulation if such has been formed . . . ."

We find that subdivision involves planning, zoning and plat-

ting and we adhere to our statement in *Hudson Oil Co. v. City of Wichita,* 193 Kan. 623, 628, 396 P.2d 271 (1964):

"[K]ansas statutes (G.S. 1949, 12-701, *et seq.,* and 13-1108, *et seq.*) anticipate a close relationship between planning, zoning and platting. Although planning is the broad purpose to be accomplished, planning cannot be accomplished without both platting and zoning."

In the case at bar we are concerned only with platting, although this opinion will of a necessity affect all facets of subdivision regulation because it determines the circumstances and the governing body having authority over the unincorporated three-mile area around Kansas cities.

Appellant contends the county platting statute, K.S.A. 19-2633, enacted in 1929, and the county zoning law, K.S.A. 19-2905, enacted in 1939, were repealed by implication prior to 1965 with the passage of K.S.A. 12-705 *et seq.* and K.S.A. 13-1108 through 13-1114 (the city platting laws). Appellant argues the 1965 amendments to K.S.A. 12-705 and the repeal of K.S.A. 13-1108 through 13-1114 the same year confirm the repeal by implication of the county statutes, giving the city control of the area for subdivision regulation.

In order to properly determine whether the city statutes in question repeal by implication the county statutes in question, it is necessary to discuss the legislative history of several city and county platting, zoning, planning and subdivision regulation statutes.

K.S.A. 19-2633 was enacted in 1929 and has remained unchanged since that time. The statute is located in Chapter 19, Counties and County Officers under the section entitled Miscellaneous Provisions. It provides:

"**When plats of land outside city to be filed with county commissioners.** Any person, partnership or corporation owning land outside the limits of any incorporated city, said land being located more than one mile from the limits of any incorporated city, desiring to subdivide any such tract of land, may plat the same and submit the plat thereof, together with an abstract of title to the land so platted, to the board of county commissioners of the county in which such land is situated. The plat shall contain a description of the land as subdivided, giving the name of said subdivision, and the restrictions to which the land or separate tracts thereof are subject.

"When said plat is approved by the board of county commissioners of the proper county, the same shall be filed with the register of deeds of said county, and after the filing of said plat with the register of deeds the various tracts or parcels of land therein may be conveyed by the description designated in said plat, and said land and tracts shall be subject to the restrictions contained in the

plat filed with the register of deeds, as above provided, and the instrument conveying such tracts or parcel of land shall contain the recital subject to existing restrictions contained in the plat of such land now on file in the office of the register of deeds." L. 1929, ch. 110, § 1.

K.S.A. 19-2905 was enacted in 1939. It has been amended five times since the original enactment in laws dating 1945, 1949, 1953, 1957 and 1970. It is located in chapter 19, Counties and County Officers in the section entitled Planning and Zoning. It provides:

"**Regulations governing subdivision of land; approval of plats and replats by zoning board and county commissioners; approval required prior to recording; fees; bond.** All plans, plats or replats of land laid out in building lots and the streets, alleys or other portions of the same intended to be dedicated for public use, or for the use of purchasers or owners of the lots fronting thereon or adjacent thereto, and plans and descriptions of all streets, alleys, or public ways intended to be deeded or dedicated for public use, or for the use of purchasers or owners of the land fronting thereon or adjacent thereto, which is not intended to be platted into lots or other designated tracts, shall be submitted to the zoning board for their consideration and their recommendation shall then be submitted to the county commissioners for their official consideration and action, and no such plat or replat or dedication or deed of street or public way shall be filed with the register of deeds as provided by law until such plat or replat or dedication or deed shall have endorsed thereon, approval by the zoning board and by the board of county commissioners.

"Before exercising the powers referred to above, the zoning board shall adopt regulations governing the subdivision and use of land within its jurisdiction. Such regulations may provide for the proportionate area of streets in relation to other existing or planned streets and with respect to adequate and convenient open spaces for traffic, utilities, access for fire-fighting apparatus, recreation, light and air and for the avoidance of congestion of population, including minimum width and area of lots and minimum ground floor area of residences; and such regulations may also provide for minimum standards and requirements for adequate drainage, flood protection and floodplain regulations and the location and paving of sidewalks, streets or public ways which are or may be required by the board to be included in any plat, replat or dedication or deed of dedication for public use which may be presented for approval.

"The zoning board may, with the approval of the board of county commissioners, establish a scale of reasonable fees to be paid in advance by the applicant for each plat or replat filed with the board for approval and may require a completion bond in a reasonable amount for all paving of streets and sidewalks prior to construction and may also require a maintenance bond in a reasonable amount to be in force for a period of one year following final approval of a newly completed paving project."

K.S.A. 19-2905 must be read in conjunction with K.S.A. 19-2901 which sets forth the area under county control. That area is:

"[A]ll lands within any township in said county which lie outside the limits of any incorporated city may be zoned according to the provisions of this act . . . ."

## The 1939 enactment of K.S.A. 19-2905 states:

"All plans, plats or replats of lands laid out in building lots and the streets, alleys or other portions of the same intended to be dedicated for public use, or for the use of purchasers or owners of the lots fronting thereon or adjacent thereto, and plans and descriptions of all streets, alleys, or public ways intended to be deeded or dedicated for public use, or for the use of purchasers or owners of the land fronting thereon or adjacent thereto, which is not intended to be platted into lots or other designated tracts, shall be submitted to the zoning board for their consideration and their recommendation shall then be submitted to the county commissioners for their official consideration and action, and no such plat or replat or dedication or deed of street or public way shall be filed with the register of deeds as provided by law until such plat or replat or dedication or deed shall have endorsed on it the fact that it has first been submitted to the zoning board and by the zoning board to the county commissioners, and by the county commissioners duly approved. Before exercising the powers referred to above, the zoning board shall adopt regulations governing the subdivision of land within its jurisdiction. Such regulations may provide for the proportionate area of streets in relation to other existing or planned streets and to the mapped plan for adequate and convenient open spaces for traffic, utilities, access for fire-fighting apparatus, recreation, light and air and for the avoidance of congestion of population, including minimum width and area of lots." L. 1939, ch. 165, § 5.

The 1945 amendment specified a clearer "chain of command" regarding who was required to approve the plat, replat, dedication or deed. See L. 1945, ch. 171, § 2. The 1949 amendment deleted a reference to "the mapped plan." See L. 1949, ch. 206, § 2.

The 1953 amendments again referred to the section of the statute requiring approval of the zoning board and county commissioners prior to the filing of the plat, replat, dedication or deed. The section was shortened and made less specific. See L. 1953, ch. 153, § 2.

In 1957, the legislature amended the statute to state that the regulations adopted by the zoning board could include standards for "adequate drainage and the location and paving of sidewalks, streets or public ways." The amendment also authorized the establishment of a scale of reasonable fees to be paid for a plat or replat filed with the county board for approval and the requirement of maintenance or completion bonds. See L. 1957, ch. 185, § 1.

In 1970, the statute was amended to add flood protection and floodplain regulations to the list of items which may be included in the regulations adopted by the zoning board.

In 1939, the legislature enacted K.S.A. 19-2914 *et seq.* authorizing the adoption of a county comprehensive plan. The 1939 law included K.S.A. 19-2918, which provides for subdivision regulation. That statute currently states:

"**Regulations governing subdivision of land; adoption by planning board subject to approval of county commissioners; enforcement within city, when; notice and hearing; bond or surety.** The planning board may adopt regulations governing the subdivision of land within that portion of the unincorporated area of the county, and the incorporated area of any city upon the written request by resolution of the governing body of such city, when the same shall have been designated by resolution of the board of county commissioners for that purpose. No such regulations or changes or amendments thereto adopted by a county planning board shall become effective unless and until the same has been submitted to and approved by the board of county commissioners and no such regulations or changes or amendments thereto adopted by a joint committee as hereinafter provided shall become effective unless and until the same has been submitted to and approved by both the board of county commissioners and the governing body of the city. Such regulations may provide for the location and width of streets, building lines, open spaces for traffic, utilities, access for fire-fighting apparatus; recreation, light, and air, for the avoidance of congestion of population, including minimum width and area of lots and for flood protection and floodplain regulations. Such regulations may also, as a condition to the approval of any plat, require and fix the extent to which and the manner in which streets shall be graded and improved, and water, sewers, drainage and other utility services and public improvements shall be provided, to protect public health and general welfare. Such regulations may provide that in lieu of the completion of such work and installation previous to the final approval of the plat, the planning board may accept, on behalf of the county, a corporate surety bond, cashier's check, escrow account or other like security in an amount to be approved by the board of county commissioners conditioned upon the actual construction of such improvements and utilities within a specified period, in accordance with such regulations, and the board of county commissioners are hereby empowered to enforce such bond by all legal and equitable remedies. Such regulations shall be adopted, changed, or amended only after a public hearing has been held thereon, public notices of which shall be given once each week for two (2) consecutive weeks in the official county newspaper which hearing shall be held not less than twenty (20) days after the last publication."

Pursuant to G.S. 1949 §§ 19-2901 through 19-2937, as amended, now K.S.A. 19-2901 through 19-2937, the Saline County Board of County Commissioners adopted and enacted comprehensive zoning and planning and subdivision regulations, effective May 28, 1953. That zoning and master plan resolution

was in effect at all times after its publication date and was amended on March 14, 1978 by Resolution 783. The resolution adopted comprehensive zoning and subdivision regulations entitled Official Zoning and Subdivision Regulations for the Unincorporated Area of Saline County, Kansas. That plan includes regulations governing platting; section f provides:

"Filing of Final Plat. The final plat shall be filed with the County Register of Deeds within one (1) year after written approval by the Governing Body . . . ."

The county's authority under the statute and the resolution is challenged by the City of Salina.

K.S.A. 12-701 through 12-735 encompass the city planning and zoning statutes. That set of statutes is divided into these subsections:

1) City planning and subdivision regulations - K.S.A. 12-701 through 12-706a;

2) Establishment of city districts and zones - K.S.A. 12-707 through 12-715d;

3) Joint cooperation in area planning - K.S.A. 12-716 through 12-724;

4) Planned unit development in cities and counties - K.S.A. 12-725 through 12-733;

5) Floodplain regulation - K.S.A. 12-734 through 12-735.

K.S.A. 12-705 was originally enacted in 1921. That law stated:

"All plans, plats or replats of lands laid out in building lots, and the streets, alleys or other portions of the same intended to be dedicated to public use, or for the use of purchasers or owners of lots fronting thereon or adjacent thereto and located within the city limits of a city of the first class, having a population of more than 20,000, or any addition adjoining and connecting with such city, shall be submitted to the city planning commission for their consideration and their recommendation shall then be submitted to the mayor and council or board of commissioners of such city for their official consideration and action. And no such plat or replat shall be filed with the register of deeds as provided by law until such plat or replat shall have endorsed upon it the fact that it has first been submitted to the city planning commission and by the city planning commission to the mayor and council or board of commissioners of such city and by such mayor and council or board of commissioners duly approved." L. 1921, ch. 99, § 5.

The law originally covered cities of the first class and was limited to the land within the city and land adjoining and connecting with the city. In 1923, the law was amended to add cities of the second and third class. See L. 1923, ch. 92, § 5. In 1929, the

legislature enacted several amendments to the statute. The most important amendment, for the purposes of this case, is the proviso that the territory outside the city limits is "within same county in which said city is located and entirely or in part within two miles of the nearest point on the city limits of any such city." See L. 1929, ch. 108, § 1.

In 1931, the statute was amended to change the limit of the territory outside the city limits to three miles. The following amendment, providing for the adoption of regulations, was also added:

"Before exercising the powers referred to above, the city planning commission shall adopt regulations governing the subdivision of land within its jurisdiction. Such regulations may provide for the proper area of streets in relation to other existing or planned streets and to the mapped plan for adequate and convenient open spaces for traffic, utilities, access of fire fighting apparatus, recreation, light, and air, and for the avoidance of congestion of population, including minimum width and area of lots." L. 1931, ch. 111, § 1.

Pursuant to K.S.A. 12-701 *et seq.,* the City of Salina, on December 2, 1963, enacted a comprehensive set of regulations entitled "Subdivision Regulations of the Salina City Planning Commission of Salina, Kansas." Those regulations established jurisdiction of all land within the city and within the three-mile area surrounding the city limits.

In 1965, Senate Bill 288 amended K.S.A. 12-702, 12-704, 12-705 and 12-706 and repealed K.S.A. 13-1108 through 13-1114, 13-1114a and 13-1413. The statutes in chapter 13 will be discussed later in this opinion. The amendment to K.S.A. 12-705 reorganized the statute to reflect its present form. That amendment was as follows:

"Existing K.S.A. 12-705 is hereby amended to read as follows: 12-705. The city planning commission of any city which has adopted a comprehensive plan may adopt and may amend regulations governing the subdivision of land located within an area which shall be designated by resolution of the governing body of the city for this purpose. Such area shall include the incorporated area of the city and may include any unincorporated territory lying outside of but within three (3) miles of the nearest point on the city limits provided such territory is within the same county in which such city is located and does not extend more than one-half of the distance between such corporate limits and the corporate limits of another city which has adopted regulations under the provisions of this section. Before the adoption of such regulations or any amendments thereto, the planning commission shall cause a notice of a hearing to be held thereon to be published in the official city newspaper. Such notice shall be published once in the official city newspaper at least twenty (20) days prior to the date of such hearing. No such

regulations or changes or amendments thereto adopted by a city planning commission shall become effective unless and until the same has been submitted to and approved by the governing body of the city and no such regulations or changes or amendments thereto adopted by a joint committee as hereinafter provided, shall become effective unless and until the same has been submitted to and approved by both the board of county commissioners and the governing body of the city. Such regulations may provide for the harmonious development of the community, including the proper location and width of streets, and for building lines, open spaces, safety and recreational facilities and for the avoidance of congestion of population, including minimum width, depth and area of lots and compatibility of design. Such regulations may also as a condition to the approval of any plat require and fix the extent to which and the manner in which streets shall be improved . . . ." L. 1965, ch. 131, § 4.

In 1970, K.S.A. 12-705 was amended to authorize the enactment of regulations pertaining to floodplains and flood protection. See L. 1970, ch. 71, § 5.

The 1971 amendments provide that the regulations may reserve or dedicate land for open space for either public recreational use "or for the future use of the residents of the residential subdivisions in order to insure the proper balance of use, design or urban areas and avoid the overcrowding of land." See L. 1971, ch. 45, § 1.

Within the 1965 enactment, K.S.A. 12-705a and 12-705b were created. K.S.A. 12-705a has not been amended since it was enacted in 1965. It provides:

"Joint committee for subdivision regulation; membership; authority; act inapplicable to municipalities operating under 12-716 to 12-721. If the area designated by the governing body of the city shall include any area lying outside of the city and governed by the regulations of the county, a copy of the resolution of the governing body designating such area shall be certified to the board of county commissioners or if at any time subsequent to the adoption of regulations governing the subdivision of land by the city planning commission, the board of county commissioners shall by resolution designate an area for such purposes which shall include lands lying within the area designated and governed by regulations of the city, the board of county commissioners shall certify a copy of such resolution to the governing body of the city and regulations governing the subdivison of land within the area designated by the city shall be adopted and administered in the manner hereinafter provided. Within sixty (60) days after the date of the certification of said resolution by the board of county commissioners or the governing body of the city there shall be established by joint resolution of said board of commissioners and governing body, a joint committee for subdivision regulation which shall be composed of three (3) members of the county planning board and three (3) members of the city planning commission to be appointed by the chairmen of such board and commission and one (1) member to be selected by the six members. Such joint committee shall have such authority as is provided by

law for county planning boards and city planning commissions relating to the adoption and administration of regulations governing the subdivision of land within the area of joint designation. Regulations adopted by the county or city and in effect at the time of the certification of such resolution by the board of county commissioners or the governing body of the city shall remain in effect until new regulations shall have been adopted by the joint committee or for a period not exceeding six (6) months from and after the date of the certification of such resolution: *Provided,* That the provisions of this section shall not apply to any county and city which are jointly cooperating in the exercise of planning authorities under the provisions of K.S.A. 12-716 to 12-721, inclusive, and amendments thereto." L. 1965, ch. 131, § 5.

It is interesting to note K.S.A. 19-2918b, enacted in 1965, provides an identical procedure to that set forth in K.S.A. 12-705a. K.S.A. 19-2918b currently provides:

"**Same; certification of resolutions of county commissioners and governing bodies of cities; joint committee for subdivision regulation; regulations; inapplicability to certain municipalities.** If the area designated by the board of county commissioners shall include lands lying within any area designated and governed by the regulations of any city, a copy of the resolution of the board of county commissioners shall be certified to the governing body of said city or if at any time subsequent to the adoption of regulations governing the subdivision of land by the county, the governing body of any city shall by resolution designate an area for such purposes which shall include lands lying within an area designated and governed by regulations of the county, the governing body of such city shall certify a copy of such resolution to the board of county commissioners and regulations governing the subdivision of land within the area designated by the city shall be adopted and administered in the manner hereinafter provided. Within sixty (60) days after the date of the certification of said resolution by the board of county commissioners or the governing body of the city there shall be established by joint resolution of said board of commissioners and governing body, a joint committee for subdivision regulation which shall be composed of three (3) members of the city planning commission to be appointed by the chairmen of such board and commission and one (1) member to be selected by the six (6) members. Such joint committee shall have such authority as is provided by law for county planning boards and city planning commissions relating to the adoption and administration of regulations governing the subdivision of land within the area of joint designation. Regulations adopted by the county or city and in effect at the time of the certification of such resolution by the board of county commissioners or the governing body of the city shall remain in effect until new regulations shall have been adopted by the joint committee or for a period not exceeding six (6) months from and after the date of the certification of such resolution: *Provided,* That the provisions of this section shall not apply to any county and city which are jointly cooperating in the exercise of planning authorities under the provisions of K.S.A. 12-716 to 12-721, inclusive." L. 1965, ch. 178, § 6.

K.S.A. 12-705b enacted in 1965 has been amended twice. The original enactment stated:

"Whenever any such regulations governing the subdivision of land under the provisions of this act shall have been adopted, the owner or owners of any land located within the area governed by such regulations subdividing the same into lots and blocks or tracts or parcels, for the purpose of laying out any subdivision, suburban lots, building lots, tracts or parcels or any owner of any land establishing any street, alley, park or other property intended for public use or for the use of purchasers or owners of lots, tracts or parcels of land fronting thereon or adjacent thereto, shall cause a plat to be made which shall accurately describe the subdivision, lots, tracts or parcels of land giving the location and dimensions thereof or the location and dimensions of all streets, alleys, parks or other properties intended to be dedicated to public use or for the use of purchasers or owners of lots, tracts or parcels of land fronting thereon or adjacent thereto and every such plat shall be duly acknowledged by the owner or owners thereof. All such plats shall be submitted to the city planning commission or to the joint committee for subdivision regulation if such has been formed, which shall determine if the same conforms to the provisions of the subdivision regulations. If such determination is not made within sixty (60) days after the plat has been submitted for consideration, such plat shall be deemed to have been approved and a certificate shall be issued by the secretary of the planning commission or joint committee upon demand. If the planning commission or joint committee shall find that the plat does not conform to the requirements of the subdivision regulations, it shall notify the owner or owners of such fact. If the plat conforms to the requirements of such regulations, there shall be endorsed thereon the fact that it has been submitted to and approved by the city planning commission or joint committee. The planning commission or joint committee may establish a scale of reasonable fees to be paid in advance to the secretary of the planning commission or joint committee by the applicant for approval for each plat filed with the planning commission or joint committee. No building permit shall be issued for the construction of any structure upon any lot, tract or parcel of land located within the area governed by the subdivision regulations that has been subdivided, resubdivided or replatted after the date of the adoption of such regulations by the governing body or governing body and board of county commissioners but which has not been approved in the manner provided by this act and the register of deeds shall not file any plat as provided by law until such plat shall bear the endorsement hereinbefore provided." L. 1965, ch. 131, § 6.

The 1967 amendment added a section stating the regulations adopted with regard to subdividing lots shall provide for the issuance of building permits on lots divided into "not more than two (2) tracts without having to replat said lot, provided that the resulting tracts shall not again be divided without replatting." The remainder of the amendment provided additional requirements for the procedure to be followed in issuing building permits. See L. 1967, ch. 87, § 1.

The most recent amendment, enacted in 1973, refers to the proviso regarding lots zoned for industrial purposes.

The final set of statutes important to this case is K.S.A. 13-1108 through 13-1114a. These statutes were first enacted in 1941 and were repealed in 1965. They operated in conjunction with K.S.A. 12-701. The act originally and up until its repeal, dealt with cities of the first class that had created a city planning commission. K.S.A. 13-1109, originally enacted in 1941, remained relatively unchanged until its repeal in 1965. It stated in part:

"It shall be the duty of the planning commission to make or cause to be made, and to adopt, a master city plan for the physical development of the municipality, and of any land outside of the municipality, which in the opinion of the commission bears relation to the planning of the municipality." L. 1941, ch. 139, § 2.

Prior to its repeal, K.S.A. 13-1111 provided:

"Whenever a planning commission shall have adopted a *major street plan* and shall have filed a certified copy of such plan with the governing bodies, then no plat of the subdivision of land lying within the city for which such major street plan has been prepared, *or within three miles of the corporate limits thereof, shall be filed or recorded until it shall have been approved by such planning commission and governing body and such approval entered in writing upon the plat by the chairman and secretary of the commission and the mayor and city clerk of said city.*" (Emphasis added.) L. 1941, ch. 139, § 4.

The following discussion of the legislative history of these city and county statutes governing platting, planning, zoning and subdivision regulation reveals confusion and conflict regarding the state of the law prior to 1965. The City argues this conflict confirms its contention that the statutes which were enacted between the years 1921 and 1965 in both the county and the city sections of the statute books were so conflicting that later statutes control in each case. The City argues that K.S.A. 12-701 *et seq.* and 13-1108 through 13-1114a governed platting and zoning in municipalities in the surrounding territory outside of municipalities. The city statutes in chapter 12 were enacted between 1921 and 1931. The city statutes in chapter 13 were enacted in 1941. The county statutes, with the exception of K.S.A. 19-2633, were enacted in 1939. The amendments to those statutes thereafter are relatively unimportant to this case. The City, therefore, concludes that prior to the revisions made in 1965, the county laws were substantially supplanted by amendments to K.S.A. 12-705 and by 13-1108 through 13-1114. Additionally, the City argues the 1965 law, enacting 12-705a and 12-705b further confirms that repeal and extends city control to the issuance of building permits for the construction in such area.

We shall not attempt to reconcile the confusion, except to provide the following observations. In *Johnson v. McArthur,* 226 Kan. 128, 135, 596 P.2d 148 (1979), we stated:

"The fundamental rule of statutory construction, to which all other rules are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statutes."

Repeal by implication is not favored and acts "will not be held to have been repealed by implication unless a later enactment is so repugnant to the provisions of the first act that both cannot be given force and effect." *Jenkins v. Newman Memorial County Hospital,* 212 Kan. 92, Syl. ¶ 1, 510 P.2d 132 (1973). See *City of Overland Park v. Nikias,* 209 Kan. 643, 498 P.2d 56 (1972), and *Pederson v. Russell State Bank, Executor,* 206 Kan. 718, 481 P.2d 986 (1971).

In determining legislative intent, we note in 1965, the legislature attempted to reconcile the prior conflict by repealing the chapter 13 statutes previously discussed and enacting additional county and city statutes designed to provide equal authority to both governing bodies. This act, of amending statutes in chapter 19, rather than repealing them, coupled with the added authority given the governing body of the county is strong evidence of an intent to clarify rather than repeal. Finally, we note that in 1970 the legislature amended K.S.A. 19-2905, one of the county statutes allegedly repealed by implication. Clearly, the legislature recognized the statute's existence as an integral part of the county's authority over platting and subdivision regulation. We find that although the state of the law in this area prior to 1965 was in conflict, the legislature did not intend to repeal K.S.A. 19-2905 by implication when K.S.A. 12-705a and 12-705b were enacted. We adhere to the following statement from *City of Council Grove v. Schmidt,* 155 Kan. 515, 519, 127 P.2d 250 (1942):

"It is the recognized rule that where successive acts of the legislature covering the same subject are in conflict with each other, the conflicts shall be resolved and both acts given effect, if possible, but if they are not reconcilable, the last expression of the legislature prevails, and this is true notwithstanding the conflicting acts were carried forward into an official revision and codification enacted by the legislature."

The current laws contemplate that either the county or the city

is available for planning and subdivision regulation in every part of the unincorporated area of a county, under all circumstances. Should a conflict arise, a joint committee is formed at the request of either entity. If the area designated for regulation by the city is outside the city and is within the area governed by county regulations, the city shall send the county a copy of its resolution designating the area in question and a joint committee shall be formed for subdivision regulation. K.S.A. 12-705a. If the City had first designated the unincorporated area for regulation, then the county would initiate the action by sending a resolution designating the area in question. K.S.A. 19-2918b. In this case neither party took action to obtain a joint commission on subdivision regulation. The duty to initiate fell upon the City since the county designated the area for regulation in 1953, ten years prior to the City's action. For whatever reason, the City chose not to avail itself of the remedy afforded by K.S.A. 12-705a, leaving the county in control of the unincorporated area. It then follows there was no requirement that the City approve the "Commerford Final Plat" prior to its recording.

Although K.S.A. 19-2633 has no direct application to this case because the land in question is located more than one mile from the city limits but still within the three mile unincorporated area, the parties have included it within their stipulated issue. We find although the statute was not repealed by the enactment of K.S.A. 12-705a and K.S.A. 12-705b, its provisions are not encompassed by K.S.A. 19-2901 *et seq.,* and in particular K.S.A. 19-2905. This irreconcilable conflict results in the statute's repeal by implication.

Appellant raises three other issues on appeal, none of which were presented to the trial court. We have repeatedly held an issue presented for the first time on appeal will not be considered by this court. *Holder v. Kansas Steel Built, Inc.,* 224 Kan. 406, 413, 582 P.2d 244 (1978); *In re Estate of Barnes,* 218 Kan. 275, 280, 543 P.2d 1004 (1975); *Landrum v. Taylor,* 217 Kan. 113, 120, 535 P.2d 406 (1975); *Nelson v. Hy-Grade Construction & Materials, Inc.,* 215 Kan. 631, 635, 527 P.2d 1059 (1974); *Baugher v. Hartford Fire Ins. Co.,* 214 Kan. 891, 901, 522 P.2d 401 (1974); *Dinesen v. Towle,* 3 Kan. App. 2d 505, 509, 597 P.2d 264, *rev. denied* 226 Kan. 792 (1979); *Mansfield Painting & Decorating, Inc. v. Budlaw Services, Inc.,* 3 Kan. App. 2d 77, 78-79, 589 P.2d

643, *rev. denied* 225 Kan. 844 (1979). We, therefore, decline to address those issues.

The judgment of the trial court is affirmed.